## Case No. 14,516.

UNITED STATES v. BARKER et al.

[5 Mason, 404.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1829.

SEAMEN — INDICTMENT FOR REVOLT — PORT OF DESTINATION—OF DISCHARGE.

1. If the crew combine together not to do duty, it is an endeavour to make a revolt within the crimes act of 1790, c. 9 (36,) § 12 [1 Story's Laws, 85; 1 Stat. 115], although no orders are actually given afterwards.

[Cited in U. S. v. Nye, Case No. 15,906.]

2. If the shipping articles are, to the final port of discharge, the voyage is not ended until the cargo is wholly unladen. The owner may order the vessel from port to port until the whole is discharged.

[Cited in The William Jarvis, Case No. 17,697.]

3. Port of destination and port of discharge are not equivalent words. Some cargo must be unladen to make the port of destination the port of discharge, or an actual termination of the voyage there.

Indictment for an endeavour to make a revolt on board the brig Apthorp, at Nantasket Roads in Boston harbour. Plea, "Not guilty."

At the trial it appeared, that George Barker was the mate of the ship, and the other defendants were the crew. They had signed the shipping articles in Charleston, South Carolina, for a voyage "to two or three ports of discharge and lading in Europe, and back to a final port of discharge in the United

States." Michael C. Bowden was master for the voyage. The vessel went to her ports in Europe, took in a cargo of salt at St. Ubes, and came back to Boston as her port of destination. Before her arrival the owners in Boston had directed a letter to the master, ordering him not to come into Boston harbour, but to proceed to Alexandria in the District of Columbia, and there land his cargo. The letter was dated several days before the arrival of the brig, and was delivered to a pilot, who delivered it to the master, while the brig was at sea, three miles out beyond the Boston light-house. The master was at this time quite ill, having spit blood; and he concluded to go into Nantasket Roads and procure, with the consent of the owners, a new master for the voyage to Alexandria. He accordingly anchored the brig in Nantasket Roads, went on shore, and with the consent of the owners he was discharged, and a new master appointed. He came on board with the new master, explained to the mate and crew the situation of the brig and his orders, and showed them, that, by their shipping paper, they were bound to go the voyage to Alexandria, as the voyage was to the final port of discharge. The mate at first expressed himself doubtingly whether to go or not, but finally refused; and the crew, notwithstanding every solicitation, refused to go the voyage. No actual orders were given to go to sea, although the brig was then ready, and the new master had all his clothes and papers and trunk on board. There was no actual proof, that the mate acted in concert with the crew, or that the latter acted by a previous combination. Some of them pleaded ill health, and were discharged; and new hands were shipped in their stead. The others separated themselves and remained together, until they were removed on shore under a warrant, and when brought before a magistrate they all refused to go on board again, though he explained to them their obligations. A new crew was then shipped, and the brig went to Alexandria with her cargo.

S. D. Parker, for defendants, argued, that there was no crime in the transaction, there being no intention to do wrong, and the offence resulting from an incorrect understanding of the law as to what was meant by a "final port of discharge." They knew that the vessel was bound from St. Ubes to Boston, which port they entered, and supposed that port must be the end of the voyage, and it appeared, that one man, shipping for Boston only, without signing the papers, was here discharged. Mr. Parker contended also, that there was no offence, because there was no disobedience of an actual command, it appearing from the evidence, that the question was put to them hypothetically, as, if you are ordered, &c., by the new captain, will you obey? The answer was in the negative; but as no such command was given, there was no disobedience. The government had proved no combination among the men to resist a lawful command, it appearing that each man, separately questioned, answered for himself, declining to proceed on the new voyage, but obedient to all orders, and uniformly civil in his replies. It appeared, that two men were here discharged, being unwell, and that some of the others had families, and all friends, in this neighbourhood. If discharged at Alexandria, they would be at the expense of returning to this port.

Mr. Dunlap, Dist. Atty., cited 1 W. Bl. 392; 1 Strange, 144; showing, that the actual fact of a conspiracy was not necessary to be proved to constitute a conspiracy, which might be inferred from circumstances. He argued, that a similar determination, expressed by all the men, and persisted in by them, amounted to a conspiracy, which was of an illegal character and came within the statute. That the crew had no right to infer, that Boston would be the final port of discharge, from the fact, that the vessel cleared at her last port for Boston, but that the owners possessed the right to order a vessel to any port whatever; that from the insertion of the words final port of discharge, the men must have considered it not only possible, but exceedingly probable, that the vessel would proceed to some other port. That the men did not refuse to go the voyage so much as to obey the new master, and that the form of an order was unnecessary after a positive refusal to obey such order if given. From the nature of the circumstances there must have been a combination among the men, which was also evident from the result.

STORY, Circuit Justice, in summing up the evidence, said: As to the first point, we are of opinion, that the shipping articles extended to the voyage to Alexandria. The fact, that the destination was, by the original instructions of the owner, to Boston, does not necessarily make it the port of discharge. "Port of destination" and "port of discharge" are not equivalent phrases. To constitute a port of destination a port of discharge, some goods must be unladen there, or some act done to terminate the voyage there. But, here, the words are "final port of discharge," so that the owner had a right to order the ship from port to port, until there was a final discharge of the whole cargo. We think, that the owner before the arrival of the brig and after, had a right to elect another port for the discharge of the cargo; and here he was guilty of no delay, and the arrival at Boston was against his orders. Under such circumstances there is no pretence to say, that Boston was any port of discharge at all, much less a final port of discharge. This construction is, as far as we know, the same, which has been uniformly put upon these words, both in shipping articles and policies of insurance.

As to the other point, we do not think, that

actual disobedience to some order given is necessary to constitute the offence of an endeavour to make a revolt. If the crew have combined together to disobey orders and to do no duty, the offence is complete by such combination, although no orders have been subsequently given. But a simple refusal, by one or more, to do duty, does not amount to the offence, unless it is done by a common combination, or to effect a common purpose. In short, the parties must act together. and with the intention of mutual encouragement and support.

Verdict, "Not guilty."