SCHERMACHER et al. v. YATES et al.[1]

(District Court, E. D. New York. July 28, 1893.)

1. SEAMEN'S WAGES—TERMINATION OF VOYAGE—PORT OF REFUGE.
   In order to effect the termination of a voyage at a port of refuge, there must be some other act than the discharge of the crew.

2. SAME—FINAL PORT OF DISCHARGE—WHAT IS.
   Seamen shipped for an outward voyage, "and back to a final port of discharge in the United States." The vessel was returning in ballast, bound for New York, when she became disabled in a gale, and bore away for Key West. There she discharged her crew, made temporary repairs, shipped another crew, and proceeded to New York. No cargo was loaded or ballast unloaded at Key West. Held, that New York, and not Key West, was her final port of discharge, and the original crew were entitled to recover against the vessel the cost of their passage from Key West to New York.

In Admiralty. Libel for seamen's wages.

Alexander & Ash, for libelants.
Edward B. Merrill, for respondents.

BENEDICT, District Judge.   This is an action on the part of the crew of the American bark Liberia against the owners of that vessel to recover a balance of wages, and the cost of a passage from Key West to New York, for each of the men.   The crew signed articles at New York on the 26th of September, 1892, for a voyage described as follows:

"From the port of New York to Monrovia, Liberia, and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge in the United States, for a term not exceeding twelve calendar months."

The vessel proceeded from New York to Sierra Leone, and thence to Kingston, Jamaica.   On the 24th day of January she left Jamaica, bound for New York, in ballast.   When about 600 miles out from Jamaica, she met with a storm, by which she lost her foremast, and everything attached to it, her mainmast, and everything above that, and broke her bowsprit.   The master thereupon determined that it was not safe, at that time of the year, to come on the coast in that condition, and so bore away for Key West, where she arrived in about 10 days.   There the crew were discharged before the shipping commissioner, and wages up to the time of the discharge were paid each man.   The men demanded payment of the expenses of their passage for New York, which was refused. The bark remained at Key West six weeks, during which time she was rigged up with a jury mast, and then she sailed without cargo to New York, where she arrived on the 20th day of February, 1893.   The seamen now claim that they were improperly discharged in Key West, and are entitled to wages up to the time of the arrival of the bark in New York, together with the sum paid for the passage from Key West to New York.

[1] Reported by E. G. Benedict, Esq., of the New York bar.

By the terms of the articles, the crew could only be discharged at "a final port of discharge in the United States." These words should be construed in view of the language employed in section 4530 of the Revised Statutes, where it is provided that a seaman is entitled to his wages "as soon as the voyage is ended and the cargo and ballast fully discharged at the last port of delivery." So construed, the last port of delivery where either cargo or ballast was discharged, if within the United States, would be a final port of discharge, within the meaning of the articles signed by the libelants. In this case the vessel, after leaving Jamaica, changed her port of destination from New York to Key West, but that change did not make Key West the final port of discharge. "Port of destination" and "port of discharge" are not equivalent terms. Story, J., says: "To constitute a port of destination a port of discharge, some goods must be unladen there, or some act done to terminate the voyage there." United States v. Barker, 5 Mason, 404. In my opinion, in order to make Key West the final port of discharge, either cargo or ballast must have been discharged, or some other act done which, in effect, terminated the voyage there. This vessel had no cargo, and therefore no cargo was discharged in Key West. She did have ballast, but, so far as appears, that was not unloaded in Key West. All that was done, besides repairing the vessel, was to discharge the old crew, and ship another crew for the original port of destination, New York.

There must be some other act besides the discharge of the crew, in order to effect a termination of the voyage at a port of refuge. Key West was simply a port of refuge. It was treated as such by the owners, and not otherwise. So far as appears, no effort was made to obtain cargo there. Nothing was done indicating an intention to undertake a new voyage there. The old crew were not discharged until their discharge was ordered by telegraph from the owners in New York after it was learned that new spars could not be obtained in Key West, and the vessel was to be delayed while repairing the old spars and rigging a jury mast; and as soon as this was done the vessel proceeded with her ballast, but without cargo, to New York. Under such circumstances, in my opinion, New York, and not Key West, was her port of final discharge. In this view, when the seamen were discharged in Key West they should have been paid the cost of their passage to New York. Evidently, they were willing to be discharged there, provided they were paid the cost of a passage to New York, but not otherwise. Having consented to a discharge at Key West, justice will be done by awarding each of them the price paid for the passage home, which was $22.

Let a decree to this effect be entered.