## THE STEEL TRADER.*

No. 106. Argued December 2, 1927.—Decided January 3, 1928.

1. Under Rev. Stats., § 4527, a seaman who, having signed articles in this country for a voyage to foreign ports and return, and who, without his fault or consent, was discharged at another port in this country, after the voyage had begun but before one month's wages were earned, was entitled to recover, in addition to the wages earned, a sum equal to one month's wages, as compensation; but he cannot recover wages for the full period of the voyage. P. 390.

2. Rev. Stats., § 4527, is applicable not only where the wrongful discharge is "before the commencement of the voyage," but also if it occurs after such commencement but "before one month's wages are earned." *Id.*

13 F. (2d) 614, reversed.

CERTIORARI, 273 U. S. 680, to a decree of the Circuit Court of Appeals, which affirmed a decree of the District Court in Admiralty, 10 F. (2d) 248, 250, awarding wages to a discharged seaman. The proceeding was *in rem*, but the decree was entered against claimant and surety as stipulators on a bond by which the ship was released from seizure.

*Mr. John M. Woolsey*, with whom *Messrs. George Denégre, Jas. Hy. Bruns, George Denneny*, and *Frederic R. Sanborn* were on the brief, for petitioners.

*Mr. Silas B. Axtell*, with whom *Mr. Eugene S. Hayford* was on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

November 29, 1921, at New Orleans, La., respondent Adams signed articles for services as oiler on the "Steel

---

* The docket title of this case is *United States Steel Products Company* v. *Adams*.

Trader" during a voyage from that city to East Indian
Ports and return, at $80 per month.  December 12, 1921,
after the voyage began and while at Port Arthur, Texas,
he was discharged without fault on his part and without
his consent.  He received before a Shipping Commis-
sioner the wages earned and $80.00 more.  The vessel
returned to New Orleans May 19, 1922.  Thereafter
Adams instituted this proceeding in rem wherein he
sought to recover as damages the stipulated wages from
December 12, 1921, to May 19, 1922, plus $2.50 per day
for subsistence.  The trial court granted recovery for the
amount of such wages ($414.50) less $80.00, with interest
from May 19, 1922, 10 Fed. (2d) 248, 250, and the Circuit
Court of Appeals affirmed that action, 13 Fed. (2d) 614.

The only matter for our consideration is the proper
interpretation and construction of § 4527, U. S. Revised
Statutes (§ 21, Ch. 322, Act of June 7, 1872, 17 Stat.
266) U. S. C. Title 46, § 594, which follows—

"Any seaman who has signed an agreement and is after-
ward discharged before the commencement of the voyage
or before one month's wages are earned, without fault on
his part justifying such discharge, and without his consent,
shall be entitled to receive from the master or owner, in
addition to any wages he may have earned, a sum equal in
amount to one month's wages as compensation, and may,
on adducing evidence satisfactory to the court hearing the
case, of having been improperly discharged, recover such
compensation as if it were wages duly earned."

Chapter 322, Act of June 7, 1872,—sixty-eight sec-
tions—prescribes elaborate regulations concerning em-
ployment, wages, treatment and protection of seamen.
*Inter-Island Steam Navigation Co.* v. *Byrne,* 239 U. S. 459,
460.  Section 21 became § 4527, R. S. without material
change.

The trial court held that § 4527 applies only to a
wrongful discharge before commencement of the voyage.

The Circuit Court of Appeals concluded that "the language of R. S. § 4527 is consistent with an intention to treat the amount required to be paid to the wrongfully discharged seaman as compensation for the service already rendered by him"; and that payment thereof does not absolve from liability for breach of the shipping articles.

We think both courts adopted improper views. According to the plain language employed, the section in question applies where the discharge takes place before the commencement of the voyage or before one month's wages are earned. Also we think, in the specified circumstances, payment of wages actually earned, with an additional sum equal to one month's wages, satisfies all liability for breach of the contract of employment by wrongful discharge. The legislation was intended to afford seamen a simple, summary method of establishing and enforcing damages.

Mr. Conger, who reported the bill, which later became the Act of June 7, 1872, for the committee and had charge of it in the House of Representatives, there stated—" The bill is substantially the Shipping-Commissioner's Act of England [The British Merchant Shipping Act of 1854] with such changes as have been deemed necessary to adapt it to this country. . . ." Congressional Globe of March 20, 1872, p. 1836..

The Shipping Act of 1854 provides—

"Sec. 167. Any seaman who has signed an agreement, and is afterwards discharged before the commencement of the voyage, or before one month's wages are earned, without fault on his part justifying such discharge and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, due compensation for the damage thereby caused to him,

not exceeding one month's wages, and may, on adducing such evidence as the Court hearing the case deems satisfactory of his having been so improperly discharged as aforesaid, recover such compensation as if it were wages duly earned."*

Speaking of § 167 in *Tindle* v. *Davison,* Queen's Bench Div. 1892, 66 L. T. N. S. 372, 374, Wright, J., said:

". . . The meaning of the section is that, when a seaman is improperly discharged, he is to have due compensation up to a month's wages in lieu of his right of action, unless he has earned a month's wages, in which case the section does not apply."

The word *compensation,* in § 4527, distinctly indicates that payment of a sum equal to one month's wages was intended to constitute the remedy for invasion of the seaman's right through breach of his contract of employment in the circumstances specified. "Damages consist in compensation for loss sustained. . . . By the general system of our law, for every invasion of right there is a remedy, and that remedy is *compensation.* This compensation is furnished in the damages which are awarded." Sedgwick's Damages, 9th Edition, Vol. 1, page 24. See also *Bauman* v. *Ross,* 167 U. S. 548. The provision that such sum may be recovered " as if it were wages duly earned " permits the seaman to enforce payment by the

---

* Sec. 162, British Merchant Shipping Act of 1894, which corresponds to Sec. 167, Act of 1854 provides:—" If a seaman, having signed an agreement, is discharged otherwise than in accordance with the terms thereof before the commencement of the voyage, or before one month's wages are earned, without fault on his part justifying that discharge, and without his consent, he shall be entitled to receive from the master or owner, in addition to any wages he may have earned, due compensation for the damage caused to him by the discharge not exceeding one month's wages, and may recover that compensation as if it were wages duly earned."

special and summary methods provided for collecting his ordinary wages.

In *Calvin* v. *Huntley* (1901) 178 Mass. 29, 32, we think the Supreme Court of Massachusetts properly interpreted § 4527, and in respect of it rightly said—

"It speaks not of punishment but of compensation, its object is to protect the seaman from loss rather than to punish the master for discharging him. The remedy is given to the seaman alone, and its plain purpose is to furnish a clear and well defined rule of damages as between him and the master for a breach of contract in which the seaman and the master or owner are the only persons interested. . . .

"Nor does the rule of damages seem unreasonable. The shipping contract calls upon the seaman to go to various places, sometimes far from home, and it may be, for instance as in this case was the actual fact, that he may be discharged in a port distant from that where he signed the articles, or where he can not immediately secure any other employment on board ship or elsewhere, and that in all fairness he should recover more than the amount due him for wages earned. Hence it might be deemed advisable to have this indefinite element made definite by a general law with reference to which the parties may conclusively be presumed to have contracted, and which therefore should be taken to be the law of the contract. The object of the statute is not to punish but to provide a reasonable rule of compensation for a breach of contract. We think the statute not penal but remedial. . . ."

The decree of the District Court must be reversed. The cause will be remanded there for further proceedings in conformity with this opinion.

*Reversed.*