## NEWTON et al. v. GULF OIL CORPORATION.

### No. 10056.

United States Court of Appeals
Third Circuit.

Argued Feb. 7, 1950.

Filed Feb. 23, 1950.

Thomas E. Byrne, Jr., Philadelphia, Pa. (Robert W. Bikle, Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellant.

Joseph Weiner, Philadelphia, Pa. (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH, McLAUGHLIN, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This case presents the question whether the libelants may recover damages from libelee for a "discharge" under the terms of the federal statute, 46 U.S.C.A. § 594, which deals with "Right to wages in case of improper discharge."

The facts are simple and undisputed. These libelants and others signed shipping articles between May 1 and May 4, 1948, for a voyage on the S. S. Gulfmoon from New York to "one or more ports in Venezuela * * * for a term of time not exceeding three calendar months." The ship did not go to Venezuela, but went, instead, from New York to Harbor Island, Texas, and returned to Philadelphia. The date of return was on or about May 15, 1948. On May 15 the articles were terminated and the seamen were signed off. Each man received his earned wages for the voyage. They protested and demanded the statutory one month's pay to which they claimed to be entitled. Upon this being refused, suit was brought to recover and the seamen won in the District Court. D.C.E.D.Pa.1949, 87 F.Supp. 210. It appears that at the time the men were signed off, in the presence of a United States Shipping Commissioner, they could have signed on again for another voyage on the same ship. This proposed voyage was for coastwise points. It also appears that the time consumed in the trip to Texas was within a day of the time in which a trip to Venezuela and back could be made.

The statute under which the claim is made reads as follows: "§ 594. Right to wages in case of improper discharge

"Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned. R.S. § 4527."

For these men to recover the one month's pay they claim they must have been (1) discharged (2) before the commencement of the voyage or the earning of one month's wages (3) without fault and (4) without consent. There is no doubt that the men were signed off before one month's wages were earned. There is no suggestion that there was any fault justifying discharge on the part of the libelants. The libelee makes some argument about the necessity of showing lack of consent. We think that is answered by the protest made by the men at the time they were signed off.[1]

The case turns, then, on the meaning of the term "discharged" as used in the statute. That there were legal rights and duties remaining between the ship and its crew, even after the men signed off, is quite clear. There is no doubt, for instance, that certain duties imposed by labor relations legislation survive the termination of shipping articles. N. L. R. B. v. Waterman Steamship Co., 1940, 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; but cf. Southern Steamship Co. v. N. L. R. B., 1942, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246.

But, nevertheless, we think the men were "discharged" within the meaning of the statute. It is interesting to note that the United States Coast Guard document issued to each man upon signing off uses the language "Date of Discharge" and "Place of Discharge." The shipping ar-

---

1. It reads as follows: "Phila Pa 5-15-48 Blanket protest by each member of the Unlicensed Personnel of the SS Gulfmoon, the payoff of the SS Gulfmoon on the 15th of May 1948 is protested by each member of the Unlicensed Personnel due to the vessel not completing shipping articles; that is, foreign articles were signed in New York N Y on the 30th of April 1948 for one or more ports in Venezuela etc (see face of shipping articles) and ship made voyage to Harbor Island, Texas and back to Philadelphia, Pa instead.

"Edward C. Behl
"Dpy Ship Comm."

ticles speak of the place the vessel is to go and follow with the phrase "back to a final port of discharge in the United States."

The statutes governing shipping articles for seamen date back to a common source, an Act of 1872, 17 Stat. 266. See The Steel Trader, 1928, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326. The word "discharge" appears in many sections of the source statute and the context of several of those sections compels the conclusion that "discharge" means the termination of the contractual obligations of a given set of articles. It is provided, for instance, that seamen "shall be discharged *and* receive their wages in the presence of a duly authorized Coast Guard official." The master or owner who pays wages "in any other manner" is subject to a fine. 46 U.S.C.A. § 641 (emphasis added.) The statute thus contemplates "discharge" and payment of wages to be simultaneous acts and there is no doubt that seamen are paid when they are signed off the articles. "Discharge" and "signing off" must therefore be synonymous terms.

We think that the established custom in shipping to sign men on for a voyage and release them at the end contemplates "discharge" and "rehiring." The word "discharge" in that connection does not mean, as it tends in common parlance to mean, termination of a man's employment because he has not done well. The statute itself conditions the seaman's right upon the lack of "fault on his part justifying such discharge." We think the word in this connection is as impersonal as its usage in the process of discharging freight or passengers.

Furthermore, we think that this interpretation fits into legislation for the protection of seamen.[2] Whether under modern conditions all these provisions should stand is a legislative and not a judicial question. It is easy to find archaic provisions in the shipping articles as, for instance, when one inspects the scale of provisions required to be served the crew. Nevertheless, the protection of the seaman as a ward of the admiralty is by no means an obsolete concept in the law. Courts not only repeat the statement, but apply it constantly.[3] We have no doubt that the

2. The scope of the protection given to seamen by statutes derived from the Act of 1872 is wide indeed. The statutes require the master or owner to execute a written agreement with every seaman carried to sea. The agreement, known as "articles," must inform the seaman of the duration of the voyage and the port of its termination, his duties and wages and the scale of provisions which are to be furnished. 46 U.S.C.A. § 564. Articles which are so vague that they are not informative are void. United States v. Westwood, 4 Cir., 1920, 266 F. 696. The articles must be signed by the seaman in the presence of a United States shipping commissioner, who must certify that its terms were understood. 46 U.S.C.A. § 565. A copy of the articles must be posted during the voyage so as to be accessible to the crew. 46 U.S.C.A. § 577. If the vessel is lost during the voyage, seamen are entitled to transportation to the port of shipment. 46 U.S.C.A. §§ 593, 678, 679, 681. Wages must be paid within two days after the termination of the voyage; failure to do so subjects the owner to double liability. 46 U.S.C.A. § 596. Payment of wages in advance is forbidden. 46 U.S.C.A. § 599.

Crew quarters are to be inspected by the Bureau of Marine Inspection and Navigation at least once each month. 46 U.S.C.A. § 660. Broad though these protective statutes are, they do not supplant or limit the ancient right of seamen to maintenance and cure. Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. Moreover, the remedies of seamen for negligent injury are expanded by the Jones Act, 48 U.S.C.A. § 688.

3. See Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239, and German v. Carnegie-Illinois Steel Corp., 3 Cir., 1948, 169 F.2d 715 (Owner's burden of proof that release was executed freely); Jones v. Waterman S.S. Co., 3 Cir., 1946, 155 F.2d 992, (maintenance and cure even though injury occurred on shore leave); Ahmed v. United States, 2 Cir., 1949, 177 F.2d 898, (maintenance and cure even though seaman failed to disclose prior illness); Spellman v. American Barge Line Co., 3 Cir., 1949, 176 F.2d 716, (mental illness); Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, (liability for maintenance and cure may continue beyond the voyage).

libelants in this case come within the terms of the statute. The voyage was changed and they were discharged before earning a month's wages. That they probably could not show, in an ordinary action of contract, damages which amounted to as much as a month's pay is not the question. They are suing for damages which have been liquidated by legislative enactment.

The libelee predicts that if the decree in this case is sustained, a ship owner will not be able to sign on men for a foreign voyage for less than a month in duration without becoming liable under the statute. The libelants reply that this case presents no such problem and has in it no such implications because this ship owner did not take the voyage which the articles called for. In other words, there was a technical breach of contract. If this is not a sufficient answer to the libelee's fears we shall make the answer if and when the problem is presented for decision.

The decree will be affirmed.