## LUCADOU et al. v. UNITED STATES et al.

United States District Court
S. D. New York.

June 23, 1951.

William L. Standard, New York City, H. Rosenfeld, New York City, of counsel, for libellants.

Irving H. Saypol, New York City, United States Attorney for Southern District of New York, M. J. Norris, New York City, of counsel, for respondents.

S. H. KAUFMAN, District Judge.

Libellants, seventeen seamen, seek to recover an additional month's wages pursuant to the provisions of 46 U.S.C.A. § 594[1].

On November 17, 1947, libellants signed articles as members of the crew of the S. S. Chalmette, an oil tanker owned and operated by the United States of America and with respect to which Tankers Company, Inc. acted as general agent. The libel has been dismissed by consent as to Tankers

---

3. 50 U.S.C.A.Appendix, § 1895.

1. § 594: "Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

Company, Inc. The articles provided that the voyage was to be from Boston, Massachusetts, "to Tampico, Mexico and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States for a term not exceeding 12 (Twelve) calendar months." The Chalmette left Boston on November 18, 1947. Arriving at Tampico, it took on a cargo of oil and then sailed for New York. There, on December 5, 1947, the crew was discharged before a United States Shipping Commissioner. The discharge was not due to any fault on the part of libellants nor was it with their consent.

In view of the wording of the statute, it is necessary to determine: (1) Whether a breach of contract by respondent is a prerequisite to liability under § 594. (2) Whether, if the first question is answered in the affirmative, there was such a breach in this case.

*1. Whether a breach of contract must be shown*

■ The legislative history of § 594 was discussed by the Supreme Court in The Steel Trader, 1928, 275 U.S. 388, 48 S.Ct. 162, 163, 72 L.Ed. 326. That section was found to have been substantially derived from § 167 [2] of The British Merchant Shipping Act of 1854. The Court quoted from Tindle v. Davison, 66 L.T.N.S. 372 (Q.B. Div. 1892) in which § 167 was construed: "The meaning of the section is that, when a seaman is improperly discharged, he is to have due compensation up to a month's wages in lieu of his right of action, unless he has earned a month's wages, in which case the section does not apply." 66 L.T.N.S. at 374. In the Tindle case, no breach having been found, recovery was denied. The Supreme Court went on to say that the word "compensation" in § 594 "distinctly indicates that payment of a sum equal to one month's wages was intended to constitute the remedy for invasion of the seaman's right through breach of his contract of employment in the circumstances specified." The Court then quoted with approval from Calvin v. Huntley, 1901, 178 Mass. 29, 32, 59 N.E. 435: "The object of [§ 594] is not to punish but to provide a reasonable rule of compensation for a breach of contract."

There is no support in the cases for the principle that liability may exist under § 594 irrespective of whether a breach of contract has been committed by respondent. In The Steel Trader, supra, there was a discharge before one month's wages were earned, and prior to the termination of the voyage. In Newton v. Gulf Oil Corporation, 3 Cir., 1950, 180 F.2d 491, 492, the articles provided for a voyage from New York to "one or more ports in Venezuela * * *." The ship did not go to Venezuela, but to Harbor Island, Texas, and then to Philadelphia, where the crew was discharged before a month's wages were earned. Each of these cases involved a deviation from the terms of the shipping articles which amounted to a breach of contract. See also Vlavianos v. The Cypress, 4 Cir., 1948, 171 F.2d 435, and Newman v. United Fruit Co., 2 Cir., 1944, 141 F.2d 191. In the Vlavianos case, liability was predicated upon a breach occasioned by the abandonment of the voyage. The Newman case held that respondent failed to sustain the burden of proving that the requisitioning of its vessel by the Government excused a breach of contract, since it should have known such action was imminent when it signed on the crew.

Thus it will be seen that where the courts have found liability to exist under § 594, there has been a breach of contract by respondent and a failure to sustain the burden of showing a legal excuse for such breach.

**2.** § 167: "Any seaman who has signed an agreement, and is afterwards discharged before the commencement of the voyage, or before one month's wages are earned, without fault on his part justifying such discharge and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, due compensation for the damage thereby caused to him, not exceeding one month's wages, and may, on adducing such evidence as the Court hearing the case deems satisfactory of his having been so improperly discharged as aforesaid, recover such compensation as if it were wages duly earned."

### 2. Whether there was a breach

■ The shipping articles provided for a voyage from Boston to Tampico "and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States * * *." Libellants contend that these articles called for a foreign voyage and none was made (a voyage to Tampico, they claim, is not within that category) and therefore their discharge before a month's wages had been earned was improper. A more reasonable interpretation of the clause "and such other ports and places in any part of the world as the Master may direct * * *" is that it was permissive in character and did not require the master to proceed to a foreign port beyond Tampico. After the return of the Chalmette from Tampico to the United States, the voyage terminated. That the master failed to direct the ship to "other ports and places" prior to its return to this country did not constitute a deviation from the terms of the shipping articles. In Moore v. Marine Transport Lines, Inc., 1950 Am.Mar.Cas. 1592 (S.D. Tex. Houston Div. 1950), the articles provided for a voyage from San Francisco "to one or more ports in the Canal Zone and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding (12) twelve calendar months." The articles were signed on December 29 and 30, 1948. The ship proceeded to the Canal Zone and then to Houston, Texas, where the crew was discharged on January 18, 1949. The court stated: "On the question of additional wages under 46 U.S.C.A. § 594, I conclude that the weight of authority is that such section only gives seamen the right to have and recover an additional month's wages when their contract has been violated. Here their contract has not been violated. The voyage and length of their employment were as stipulated in the articles." 1950 Am.Mar. Cas. at 1593–1594.

Libellants having failed to show that their discharge was improper, judgment must be for respondent.

The findings of fact and conclusions of law are incorporated in the opinion. If either of the parties deems additional findings necessary, they may be submitted.

Submit judgment in conformity herewith.