**SERGEANT et al.**
v.
**THE O. M. BERNUTH.**
**No. 1190.**

United States District Court,
S. D. Texas, Houston Division.
June 3, 1954.

Bliss Daffan, Houston, Tex., for libellants.

Robert Eikel, Houston, Tex., for respondent.

KENNERLY, Chief Judge.

This is a suit in admiralty by libellants,[1] seamen on the Steamship "O. M. Bernuth", in rem, against such Steamship. They served as seamen on such Steamship from on or about May 15, 1953, to June 1, 1953, and were then discharged and paid wages to the time of their discharge. They having been discharged before they earned one month's wages, sue to recover an additional month's wages under Section 594, Title 46 U.S.C.A. The Bernuth, Lembcke Company, Inc., claimant of such Steamship, has answered, combatting libellants' claims.

The facts are substantially as follows:

(a) Libellants signed Shipping Articles on the Steamship O. M. Bernuth at the port of San Francisco, California, on or about May 15, 1953, which Shipping Articles contain the following paragraph:

"It is agreed between the Master and seamen, or mariners, of the Steamship O. M. Bernuth of Wilmington, Del., of which P. S. Ramsey Lic. No. 49902 is at present Master, or whoever shall go for Master, now bound from the port of San Francisco, California, on a tramp voyage to a port or ports on the East Coast of the United States, either direct or via Pacific Coast Ports, Mexican Ports, Ports in the Gulf of Mexico, Carribean Ports in the Panama Canal, Atlantic Coast Ports or

1. The names of libellants are as follows: Arthur H. Sergeant, Walter J. Brown, Charles Lavool, John D. Seaman, Paul T. Mapes, Gorge S. Ichton, Raymond Russo, William Gray, Walter E. Schults, Roger J. Carr, William C. Steiber, William W. Willett, Jerry Beasley, Shaffer C. Tim, Paul W. Ross, Bernard B. Milanovich, Robert D. Mastick, William E. Baker, Newell R. Goodridge, Jerome M. Lalor, Edmund P. Olbrys, John M. Mol, Joseph Harris, Robert L. Dukes, William Crozier, Henry J. Randall, Isaac W. Thomas, and Eliodoro Rivera.

ports in the Hawaiian Islands, in any order, at the Master's option, and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding six (6) calendar months."

This was the Contract between the parties and will be referred to as such in the discussion.

There is apparently no dispute about such Articles having been executed under the circumstances and in the manner required by Law.

(b) At the time such Articles were executed, a "Forecastle Card", containing the above quoted paragraph, had been and was posted on the vessel.

(c) The Steamship left San Francisco, California, on or about May 15, 1953, on the voyage indicated in the Articles. She passed through the Panama Canal, stopping at Balboa. There on May 26, 1953, her Master was informed by her Owners, through her Agent, that there was no cargo for her, and they directed her to proceed to the United States.[2] Later, May 29, 1953, while on her way to the United States, the vessel received orders to proceed to Houston, Texas.[3] No questions are raised as to the good faith of respondent in proceeding to the United States and to Houston. I find that respondent did so in good faith.

(d) At Houston, Texas, the crew, including libellants, were paid wages to June 1, 1953, and discharged, without fault on their part and before they had earned one month's wages. Their ex-

penses back to San Francisco were paid by respondent. A statement by members of the crew, or some of them, dated June 1, 1953, appears on the Articles, as follows:

"June 1st, 1953
"Houston, Texas

"We the undersigned crew members of the S. S. O. M. Bernuth signed on under these articles on May the 15th 1953 in good faith; we are signing off under protest. In as much as these are foreign articles and the vessel is being laid up, we feel that there has been a breach of contract and that we are entitled to one month's pay under marine law."

1: In libellants' Brief, they present only one proposition, to wit:

"Libellants are entitled to a month's wages in addition to their earned wages because the Articles which they signed constituted a contract between Libellants and Respondent for the payment of additional wages under Title 46, Section 594 U.S.C.A. in the event of improper discharge prior to one month's wages having been earned."

Section 594 is quoted in the margin.[4] It has long been the rule that before a seaman can recover additional wages or compensation thereunder, he must show that he has been improperly or wrongfully discharged. The Steel Trader, 275 U.S. 388, 389, 48 S.Ct. 162, 72 L.Ed. 326; Moore v. Marine Transport Lines, 1950 A.M.C.1592, and cases there cited. Lucadou v. United States,

2. This appears in the Log, as follows:
"12.12 Agent (Boyd Bros.) boarded with orders to clear for Galveston, Texas."

3. This order is shown by the Log, as follows:
"1045 (May 29th) The following radiogram was received from New York (Hugountain) 'Lay up Harrisburg Machine Yard Houston gas-free for shipyard only. Pay off Monday. Telephone Junge arrival.'"

4. Section 594 is as follows:
"Any seaman who has signed an agree-

ment and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

D.C., 98 F.Supp. 946, and cases there cited.

■ 2: At the outset, libellants, apparently relying upon The Steel Trader, supra, say that they may recover under Section 594, because the Contract between libellants and respondent was for a foreign voyage and the vessel did not embark upon nor complete such voyage. I do not think the Contract was for a foreign voyage. True, the Contract, after, as herein pointed out, setting forth a definite voyage, calls for the voyage to be to "such other ports and places in any port of the world *as the Master may direct*," but there is no evidence that the Master ever so directed or that the vessel visited foreign ports. Farrell v. United States, 336 U.S. 511, 520, 69 S.Ct. 707, 93 L.Ed. 850. Lucadou v. United States, supra. Moore v. Marine Transport Lines, supra. I do not think libellants are entitled to recover on the theory that the Contract called for a foreign voyage.

■ 3: Libellants say that the Contract between libellants and respondents was violated, in that the voyage was too short in point of time and that libellants were improperly discharged. The only provision in the Contract fixing the length of the time of libellants' employment thereunder is found in the last sentence of the quoted portion of the Shipping Articles. It is said that the term of employment shall not *exceed* "six calendar months." Therefore, libellants were not improperly or wrongfully discharged because discharged within 15 or 20 days after the voyage was begun.

■ 4: Libellants say their discharge was improper or wrongful, because of the place of their discharge. The only provision in the Contract between libellants and respondents fixing the *place*

of discharge is that which says "and back to a final port of discharge in the United States." The port of libellants' discharge was Houston, Texas, within the United States. Therefore, libellants were not improperly nor wrongfully discharged in that respect.

■ 5: But libellants claim that the voyage contracted for was to commence at San Francisco, and end at "a port or ports on the east coast of the United States," and that libellants were improperly and wrongfully discharged at Houston *before the completion of such voyage.* I think libellants are right. It is true that it was a "tramp voyage" and that it could be made either direct or by way of the several ports named and "in any order at the Master's option," but it was nevertheless definitely a voyage to some port or ports on the east coast of the United States. It is clear that libellants were improperly and wrongfully discharged at Houston before the completion of the voyage set forth in the Contract. Newton v. Gulf Oil Corp., D.C., 87 F.Supp. 210, 211, Id., 3 Cir., 180 F.2d 491.

■ But respondent contends that Houston is a port on the "east coast of the United States." I do not think so. In view of the fact that "ports in the Gulf of Mexico" are mentioned in the Contract, I do not think that Houston, which is a port in the Gulf of Mexico, is a "port on the east coast."

■ 6: The question is raised of whether Section 594 is applicable, in view of the wording and provisions of Section 544, Title 46, of the Code. While Section 544 applies generally to vessels engaged in the coastwise trade, "coastwise trade between the Atlantic and Pacific coasts" is excepted.[5] Clearly the

**5.** Section 544, Title 46 U.S.C.A., is as follows (italics mine):

"None of the provisions of sections 201–203, 541–543, 545–549, 561, 562, 564–571, 574, 577, 578, 591–596, 600, 621–628, 641–643, 644, 645, 651, 652, 662–669, 701–709, 711, 713, of this title shall apply to sail or steam vessels engaged in the coastwise trade, *except the coastwise trade between the Atlantic and Pacific coasts*, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage."

voyage contracted for from Francisco to a port or ports on the east coast of the United States was between the "Atlantic and Pacific coasts", within the meaning of Section 544. Johnson v. Standard Oil Co., D.C., 33 F.Supp. 982, and cases there cited.

From what has been said, it follows that judgment should be rendered in favor of each libellant against respondent for one month's additional wages under Section 594.