**Burl HAIRE**

v.

**ISTHMIAN LINES, INC.**

Civ. A. No. 2841.

United States District Court
S. D. Texas,
Galveston Division.

Jan. 18, 1963.

Schwartz & Lapin and Newton B. Schwartz, Houston, Tex., for plaintiff.

Eastham, Watson, Dale & Forney and Edward W. Watson, Galveston, Tex., for defendant.

NOEL, District Judge.

The above entitled case having been tried before the Court without a jury, at the close of the evidence and after hearing the arguments of counsel, the following findings of fact and conclusions of law are made by the Court under Rule 52.

## FINDINGS OF FACT

1. The plaintiff, Burl Haire, was employed by the defendant, Isthmian Lines, Inc., as utility mess-man on the S.S. STEEL SEAFARER. He signed articles in the usual form before the United States Shipping Commissioner at Houston, Texas on August 29, 1961 for a voyage "from the Port of Houston, Texas, via one or more United States ports, if required; to one or more Mediterranean Ports, and/or Persian Gulf Ports, and/or Indian Ocean Ports, as required; and thence, to such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the Continental United States * * *."

2. From Houston, the S.S. STEEL SEAFARER went to Galveston, Texas, where she continued to load cargo for this voyage. While the ship was at Galveston and on the morning of September 1, 1961, plaintiff reported to the ship's officers that he had injured his left wrist the night before. He went to the U.S. P.H.S. hospital at Galveston, where his injury was diagnosed as a fracture of the radius and ulna of that arm, and was admitted as an inpatient of that facility on September 1, 1961. Plaintiff remained in this hospital until September 16, 1961 when he was put on outpatient status, with his wrist still in a cast. On October 3, 1961, he was again admitted to the same hospital but for a broken leg. For the treatment of the broken leg, he remained in the hospital until May 31, 1962, except that between January 13 and January 25, 1962, he was placed on an outpatient status. No further medical attention was required for his left wrist injury beyond October 3, 1961, by which date he had reached the point of maximum recovery as to that injury and there was no evidence of any permanent disability resulting from it.

3. Plaintiff contends that his wrist injury was caused by the heavy door of the ship's vegetable reefer closing upon it while he was coming out of that compartment in the performance of his duties aboard ship on the night of August 31, 1961. There was no evidence which would support a finding that if the injury did happen in this manner it was caused either by negligence of the defendant or its employees other than the plaintiff himself, or by unseaworthiness of the vessel. Therefore, it is expressly found that the defendant was not negligent, and the S.S. STEEL SEAFARER was not unseaworthy, in any respect which could have been related to this injury, and the injury occurred in some manner either unknown or from the plaintiff's own negligence or as the result of an unavoidable accident.

4. S.S. STEEL SEAFARER sailed from Galveston for foreign ports, via New Orleans, on September 3, 1961. On this date the Master made an entry in his official log, before sailing, which stated that plaintiff "Failed to report on board at time of sailing. Therefore declare him as failed to join. Voucher for wages earned amounting to $28.45 left with agent at this port." At the next port, New Orleans, an entry was made by the Shipping Commissioner on the Particulars of Discharge page of the ship's articles showing as to plaintiff "Galveston, Texas, 9/2 F.T.J., Rept by Master." The letters "F.T.J." so used had the accepted meaning of "Failed to Join."

5. On September 18, 1961, plaintiff went to the office of the agents for defendant at Galveston and asked for his earned wages. He was told that he would have to sign a mutual release before the Shipping Commissioner before he would be paid these wages for the three days ending August 31, 1961, and having done so and a "certificate of mutual release" in the official form having been issued by the Shipping Commissioner, plaintiff was paid his wages for the three days in the amount of $28.45 less $3.06 for Social Security and withholding tax.

6. Plaintiff testified that he told the Shipping Commissioner he was signing the mutual release "under protest." He testified that he did this upon advice of his counsel. Therefore, it is found that good cause exists for this Court to set aside that mutual release.

7. The voyage of S.S. STEEL SEAFARER for which plaintiff had signed articles ended on January 4, 1962. Plaintiff's wages under these articles were at the monthly rate of $284.52. The rate for maintenance, during such time as he was entitled to receive it, was $8.00 per day.

### CONCLUSIONS OF LAW

1. Plaintiff is not entitled to receive any damages for his injury either because of the negligence of the defendant or the unseaworthiness of the S.S. STEEL SEAFARER.

2. Plaintiff is entitled to a judgment for maintenance in the amount of $144.00 covering the period from September 16, 1961, to October 3, 1961.

3. Good cause exists for setting aside the mutual release executed by plaintiff, under provisions of the United States Code, Title 46, Section 597.

4. An injured seaman on an ocean-going vessel is entitled to wages to the end of the voyage for which he has signed. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

5. 46 U.S.C.A. § 594, providing for one month's pay in the event of the discharge of a seaman without fault on his part before the commencement of a voyage or before one month's wages are earned, is not applicable to a seaman taken from a vessel to a hospital because of injuries. Manhattan Canning Co. v. Wilson, 217 F. 41 (9th Cir. 1914). The statute is intended to afford a simple summary method of establishing and enforcing damages for the breach of an employment contract by a wrongful discharge of a seaman. United States Steel Products Co. v. Adams, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326 (1927). This statute is inapplicable to situations involving unearned wages as an element of maintenance and cure. It does not limit the wages that may be recovered by a seaman discharged before the commencement of a voyage or before the earning of one month's wages because of a maintenance and cure type injury.

6. In addition to the wages for three days that he has already received, plaintiff is entitled to wages from August 31, 1961 through January 4, 1962, the date of the termination of foreign articles and of the voyage of the S.S. STEEL SEAFARER, at a monthly rate of $284.52 basic pay and excluding overtime, board and sustenance, same amounting to a total of $1,166.63.

7. Plaintiff is entitled to interest at six per cent (6%) of his total recovery of $1310.63 from the date of these findings and conclusions until paid. All costs in this Court are taxed against the defendant.

8. Let judgment enter accordingly. The Clerk of the Court will notify plaintiff's counsel to draw an appropriate order and submit to opposing counsel for approval as to form and to the Court for entry.