**ISTHMIAN LINES, INC., Appellant,**

v.

**Burl HAIRE, Appellee.**

**No. 20553.**

United States Court of Appeals
Fifth Circuit.

July 8, 1964.

Edward W. Watson, Eastham, Watson, Dale & Forney, Galveston, Tex., for appellant.

Newton B. Schwartz, Houston, Tex., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and SIMPSON, District Judge.

JOHN R. BROWN, Circuit Judge.

After a successful defense of the damage end of a Jones Act suit, 46 U.S.C.A. § 688, Marshall v. Isthmian Lines, Inc., 5 Cir., 334 F.2d 131, the Shipowner appeals from the wage element portion of the traditional maintenance-wages-and-cure claim. This attack on principle, not principal, does assert some contentions which have apparently escaped the resourceful counsel who, with Judges and law publishers, have helped build this formidable legal structure. Novelty, however, is no substitute for validity so this case really ended where most realistically do—in the trial court. The Shipowner contends that the admitted right to M–W–C [1] wages is foreclosed for two reasons. The first is because of a mutual release executed before the United States Shipping Commissioner when earned wages were paid. 46 U.S.C.A. § 597. The second is that with the release "set aside" the allowance should be restricted to one month's wages under 46 U.S.C.A. § 594.

The tale may be shortly told. The Seaman signed on the SS STEEL SEAFARER on August 29, 1961, for a foreign voyage from Houston to Mediterranean Ports and return to a United States Port. It is undisputed that the voyage terminated January 4, 1962. On late August 31 or early September 1 while the ship was in Galveston for outbound cargo, the Seaman sustained a fractured wrist when a reefer door closed on his arm under circumstances not, so the Judge found, attributable to the Shipowner's fault. By the Shipowner's brief, we are told at this point, although the point is not so clear, that there "was evidence that on the evening of August 31 [the Seaman] was ashore until after midnight and drinking."

On September 1, the U.S.P.H.S. hospital at Galveston certified him as "Not Fit for Duty." On that day he removed his gear from the ship to enter the hospital for reduction of the fracture. Treatment there was apparently delayed a few days to get him over the consequences of "a few beers" he consumed between ship and hospital. On September 16, he was discharged to out-patient status with the arm still in a cast. On October 3 during a scuffle—again after "a few beers"—he fractured his leg. The leg injury put him out of commission for seven months.

Meanwhile, back on the ship, the master at the next port (New Orleans) logged the Seaman "for failing to join" the vessel on departure from Galveston September 3.

The new twist, cf. Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F.2d 696, 697, 1963 A.M.C. 355, in M–W–C cases comes from the fact that on September 18 while on out-patient status, the Seaman sought to collect his 3 days' earned wages for August 29–31. The ship's agent took him before the Shipping Commissioner where he was paid the amount admittedly due, $25.39 and for which the Seaman signed a

---

1. Maintenance, Wages and Cure.

wage voucher and the official Mutual Release form.

The Shipowner's basic claim is that the trial Court erred in finding good cause, 46 U.S.C.A. § 597, for setting aside the release. After hearing much evidence, the Judge found good cause. Save that we think that the evidence and findings were quite superfluous, we would credit this without reservation. Such factors were simply beside the point.

 This statute obviously refers to earned wages under the contract memorialized by the shipping articles. It has no relation to M–W–C wages which, springing out of the relationship of ship and seaman, not the employment contract, reflect the law's concern for the seaman becoming sick, disabled or ill in the service of the ship. Gilmore & Black, Admiralty, §§ 6–6, 6–13, at 253, 271 (1957); Norris, The Law of Seamen, §§ 543–48 (2d ed. 1962); Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368, 1933 A.M.C. 9; Calmar Steamship Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993, 1938 A.M.C. 341; The Osceola, 1903, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760.

 Our conclusion is supported for additional grounds. The Shipping Commissioner is no roving arbiter of all of the disputes between ship and seaman. He is given no power to resolve unliquidated demands for cure, for maintenance, for damages growing out of unseaworthiness or negligence. Moreover, as a principle of ordinary law—land-locked, seagoing or amphibious—a release for payments for amounts admittedly due lacks consideration. See W.R.B. Corp. v. Geer, 5 Cir., 1964, 332 F.2d 180.

The same approach disposes of the second contention that the maximum allowance is one month's wages under 46 U.S.C.A. § 594. This statute imposes a liability for one month's wages to a seaman who, "without fault * * * justifying such discharge" and "without his consent" is "discharged before the commencement of the voyage or before one month's wages are earned."

 We are of the view that this has nothing to do with the ship's liability for M–W–C wages. Without watering down that principle, it is fair to point out that to obtain the advantage of this statute there must be both a "discharge" and an "unjustifiable" discharge. Presumably the Shipowner satisfies that here by acknowledging, as it surely must, that the master's logging of the Seaman "for failing to join" the ship at Galveston was without any legal basis whatsoever. Quite apart from general considerations, we could safely assume that a shipowner could hardly construct a time limitation out of his own derelictions.

 But as with § 597, this statute deals with earned wages and wages which would have been earned had there been no wrongful discharge. Of course it may constitute a ceiling to such a claim. United States Steel Products Co. v. Adams, 1928, 275 U.S. 388, 48 S.Ct. 162, 163, 72 L.Ed. 326. The Act "was intended to afford seamen a simple, summary method of establishing and enforcing damages," 275 U.S. 388, 390, 48 S.Ct. 162, for a wrongful discharge, not M–W–C wages occasioned by an injury occurring within the first month of the voyage.

 But its application to M–W–C wages would frustrate the whole concept behind maintenance, wages and cure. It is too late in the day to suppose that during the 92 years of this statute,[2] courts have been mistakenly handing down awards for wages to the end of the voyage. Gilmore & Black, Admiralty, § 6–12, at 268 (1957); Norris, The Law of Seamen, § 542, at 589 (2d ed. 1962); Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 658, 1949 A.M.C. 613; Enochasson v. Freeport Sulphur Co., D.C.Tex., 1925, 7 F.2d 674.

The District Judge was right on all grounds.

Affirmed.

2. The forerunner of 46 U.S.C.A. § 594 is R.S. § 4527, enacted in 1872. Act of June 7, 1872, § 21, ch. 322, 17 Stat. 266.

HUTCHESON, Chief Judge (concurring specially).

Of the opinion that the findings of fact and conclusions of law of the district judge correctly disposed of the case and that his judgment based thereon should be affirmed, I concur in the result.