447 F.2d 435
 Sotirios FREDELOS et al., Petitioners-Appellants,
v.
MERRITT-CHAPMAN & SCOTT CORPORATION, Libelant-Appellee, v.
STEAMSHIP PADRE ISLAND, her engines, boilers,
etc., and STEAM TANKER PADRE ISLAND,
INC., Respondents-Appellees.
No. 71-1212 Summary Calendar.*
*(1) Rule 18, 5th Cir.; see Isbell Enterprises
v.
Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970).
 United States Court of Appeals, Fifth Circuit.
 June 23, 1971, On Rehearing Sept. 10, 1971.
 
 Arthur Roth, Miami, Fla., for petitioners-appellants.
 George Stelljes, Jr., Jacksonville, Fla., for Socony and Mobil.
 James F. Moseley, Kurz, Toole, Taylor, Moseley & Gabel, Jacksonville, Fla., for Steam Tanker Padre Island, Inc.
 Adam G. Adams, II, Adams & Adams, Jacksonville, Fla., for Jacksonville Shipyards, Inc.
 Joseph M. Glickstein, Jr., of Glickstein, Crenshaw, Glickstein, Fay & Allen, Jacksonville, Fla., for Merritt-Chapman & Scott Corp.
 Jett, Sykes & Berkley, Norfolk, Va., for Moon Eng.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an interlocutory appeal in an admiralty case. On February 10, 1966, S/T PADRE ISLAND was stranded in a leaking condition on Hen and Chicken's Shoal not far from Bimini. Merritt-Chapman & Scott Corporation entered into a 'no cure-no pay' salvage agreement with the vessel's owner and mortgagee to salvage the leaking ship and to deliver it to the Port of Jacksonville, Florida. Shortly after its delivery to Jacksonville, numerous attachment proceedings were instituted. These in rem libels included actions for cargo damage, shipyard reparis both before and after the grounding, salvage, maintenance and cure, seamen's wages, and the foreclosure of a preferred ship mortgage on this vessel of Panamanian registry.
 
 
 2
 By order of the court, the various libels were consolidated into a single cause. On October 14, 1966 an order was entered directing the sale of the S/T PADRE ISLAND for the sum of 116,000 dollars. The vessel was sold and the proceeds were deposited into the registry of the district court. Merritt-Chapman & Scott moved for summary judgment and filed affidavits and certain documentary evidence in support of its motion. No responsive affidavits or other proofs were tendered by any party in opposition to this motion. On October 20, 1966 the district judge entered summary judgment in favor of Jacksonville Shipyards, Inc. and Moon Engineering Company, Inc., for repair work and in favor of Merritt-Chapman & Scott for salvage. The court reserved a ruling on the priorities of all claims before it and stayed execution of the summary judgments pending an adjudication of these priorities.
 
 
 3
 During the pendency of these proceedings a separate action was commenced in the United States District Court for the Southern District of Texas by the vessel's owner and mortgagee against the hull insurers on marine insurance policies for recovery of 877,000 dollars. The district court stayed the instant proceedings pending the outcome of the Texas proceedings. The federal district judge in Texas, late in 1969, entered a memorandum against the claim of the vessel owner and mortgagee and in favor of the insurers.
 
 
 4
 Thereupon the district judge in the instant cause removed the stay and on December 17, 1970, entered an order establishing the priorities with respect to the several competing claims. This order provided for two categories:
 
 Category
 
 5
 1 Seamen's Wage Claims (not to exceed $18,000.00);
 
 
 6
 1 Merritt-Chapman & Scott Corporation-- Salvage Claim of $85,000, for which summary judgment has been issued;
 
 
 7
 2 Seamen's personal injury and maintenance and cure claims;
 
 
 8
 2 Rawls Brothers Contractors, Inc. (Jacksonville Shipyards, Inc.) 1966 repair claims of $35,767.00 for which summary judgment has been issued.
 
 
 9
 In the same order, after finding that the wages of all intervenor seamen had been paid for all time actually worked aboard the vessel and that their claim for statutory wages did not exceed the sum of 18,000 dollars, the district judge removed the stay of execution with respect to the summary judgment in favor of Merritt-Chapman & Scott and directed the payment of 85,000 dollars to the said claimant. The trial judge also denied motions for summary judgment on behalf of the seamen, but on the same day directed that each of the seamen file with the court an affidavit setting forth the amount of their unpaid wages, together with a statement of the manner in which such wages were computed, and proof of Panamanian law, if such law were determined to be applicable.
 
 
 10
 Realizing that if the 85,000 dollar salvage award could somehow be defeated or lessened, then the remaining libelants could take more, the appellant-seamen, who not only assert their Category 1 claims for wages but also Category 2 claims for personal injuries and maintenance and cure, attack the propriety of the 1966 summary judgment entered in favor of the salvor.
 
 
 11
 We now determine that this prior summary judgment in favor of Merritt-Chapman & Scott on its salvage claim for 85,000 dollars was without error. Based upon the pleadings, the exhibits, and the affidavits, the trial court properly concluded that there was no issue of material fact to be determined. The uncontested proof and documentation made it undisputedly apparent that Merritt-Chapman & Scott had entered into a no cure-no pay salvage agreement with the owners of S/T PADRE ISLAND to salvage the leaking and stranded ship, which had the warranted value of 620,000 dollars. The fee was to be 85,000 dollars and was payable only if the salvage were successfully accomplished.
 
 
 12
 We are likewise unable to perceive any error in the ruling of the trial court on the issue of priorities. First wages and then salvage have the first and second priorities. These were properly placed in Category 1. City of Athens, 83 F.Supp. 67 (D.C.Md.1949); Gilmore and Black, Law of Admiralty, Ch. IX 9-20 (1957). Into Category 2 were placed seamen's personal injury claims and maintenance and cure and the contract repair claim of Jacksonville Shipyards. The trial judge specifically reserved his ruling on the priority between these two claims. There is no impropriety in this abstinence because the determination may become unnecessary for either of two reasons. The total fund remaining for distribution is slightly over 103,000 dollars and it would be consumed by the two Category 1 claims if seamen's wages approach 18,000 dollars. Secondly, the court has not yet dealt with the priority, if any, which will be accorded to such interest as the salvor may be entitled to receive Even at six percent per annum from the date of judgment, it would consume all of the fund not payable as wages.
 
 
 13
 The trial judge properly exculuded the remaining contract claims from Category 2, since Jacksonville's claim has a higher priority because it arose more recently than other contract claims. Rubin Iron Works v. Johnson,100 F.2d 871 (5th Cir. 1939). Similarly, the contract claim would outrank the preferred ship mortgage on a foreign vessel. See, 46 U.S.C.A. 951 (1958).
 
 
 14
 Finally, the seamen attack the denial of summary judgment on their behalf on the question of wages. They contend that, as a matter of law, they are entitled to an award of statutory wages. Well in advance of the December 17 hearing, the vessel owner had filed and served copies of properly verified releases purporting to show that all the seamen had been paid in full for all wages due. The seamen did not oppose the owner's proof prior to ro at the hearing. Thus, there was a total absence of proof to sustain summary judgment in favor of the seamen. Their complaint was unsworn and no affidavits or other proofs were filed or offered. The only affidavit filed by them in this connection was that of the seamen's counsel to the effect that Panamanian law entitled his clients to recover statutory wages upon separation from the ship's service. Despite the fact that there was simply no proof, the judge nevertheless acted with an abundance of caution by allowing the seamen additional time to supply some proof of their claims.
 
 
 15
 Affirmed and remanded.
 
 ON PETITION FOR REHEARING
 PER CURIAM:
 
 16
 The most important question appellant raises by his petition for rehearing is the proper location of a seaman's right to maintenance and cure in the priority ranking of maritime liens. Appellant contends that by affirming the lower court's order, which placed this lien in a category below salvage, we have overturned many precedents of this Court and other admiralty courts. We cannot find those precedents. In fact, we cannot find, nor have we been directed to, any specific pronouncement at all that would fix a place in the lien priority pecking order for this important seaman's interest.
 
 
 17
 Appellant would have us rely on Isthmian Lines, Inc. v. Haire, 334 F.2d 521 (5th Cir. 1964), to dispose of this problem. In that case, this Court held that a seaman who had signed a wage release in return for three days' pay admittedly due him could not thereby be deemed to have waived his right to recover maintenance and cure for a preceding injury. Part of that seaman's recovery, and the item at issue in the case, was the traditional wages 'to the end of the voyage' due him. It is well-settled that the third component of the maintenance and cure guarantee is that amount of wages the seaman would have earned had he remained able-bodied for the period for which he was hired. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, 1949 A.M.C. 613 (1949). Thus, when in the Haire case this Court referred to the three-part wage, maintenance and cure compensation as 'M-W-C', it was because unearned wages are a part of maintenance and cure. It was not because, as appellant suggests, wages, maintenance and cure are always a trinity. Nor does it follow therefrom that the wage portion of this trilogy is necessarily to be afforded the same priority as are earned wages contracted for in the shipping articles. And even were that so, that in itself would not lift the maintenance and the cure elements of the threesome into the same category. While wages are an integral part of maintenance and cure, it is not a valid syllogism to deduce that maintenance and cure are parts of wages. In sum, then, though Haire reminds us that the right to maintenance and cure is an important and ancient one 'springing out of the relationship of ship and seaman,' that case does not establish that a seaman's lien for maintenance and cure necessarily ranks in priority with his lien for wages. Despite our disagreement that Haire controls our decision, we do perceive that wages and maintenance and cure are entitled to the two highest categories of lien priority and that we were in error in failing to so hold previously.
 
 
 18
 Courts and commentators have had precious little to say regarding maritime lien priorities. Judge Brown's remark on the question in 1880 that 'it is scarcely too much to say that each court is a law unto itself,'[1] is not too far afield even now. A leading text reaches the conclusion that priority litigation is necessarily a highly localized phenomenon, rarely reaching the appellate level, and for the most part controlled by the equitable discretion of the district judge. 'Nine times out of ten, what seems fair to the trial judge will be the law of the case for all times.'[2] We are not now disposed to alter that general scheme. It is only to make clear what we believe general maritime law has intended for some time that we revise the lower court's order.
 
 
 19
 The cases and authorities definitely establish that 'seamen's wage liens are especially favored and are found in the first class of order.' See Norris, The Law of Seamen, 454 and 530 (3rd ed. 1970) and cases cited. The traditional overriding priority of the lien is often illustrated today by quoting with approval Judge Gray's hyperbolic dramatization in 1898, 'so long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages.'[3] The importance of this statement for us is that it suggests a reason for the wage lien traditionally topping the priority list. It is because the ship may be the only security the seaman has; it is the only provider on which he can rely; and no other interest or rule of law should be allowed to deprive him of the assurance that he will be thereby sustained. Norris suggests, at 530, two related reasons why the seaman stands first in line: first, because he is a ward of the admiralty court, and second, because without the efforts of the seaman in bringing the ship safely to port, there would be no vessel against which other parties could assert their claims.[4]
 
 
 20
 The import of these three reasons together is that just as a seaman owes his first duty to his ship, so does she owe the same to him. We think these reasons apply with near equal force to the maintenance and cure lien as they do to the wage lien. First, a stricken seaman should be secure in the knowledge that he will be cared for at a time when he cannot adequately care for himself. 'Members of the crew have no haven other than the ship. If sickness or hurt befalls them, what can be done? * * * The ship must perforce take care of them. There is likewise the humanity appeal which runs into the same necessity. It would be inhuman to leave a helpless man without succor. Someone should give him aid. Who other than the ship?' The Quaker City, 1 F.Supp. 840, 841 (E.D.Penn.1931). Second, a seaman is no less a ward of the court when in sickness, than when in health. In fact, his need for equity's assistance is usually greater in the first case than in the second. And finally, though his services may not have been offered the day the ship came into port, at some time during the voyage the seaman will have contributed to her general safety and success.
 
 
 21
 Placing maintenance and cure in a category of priority, right after if not alongside seaman's wages, accords with prior indications of its rank. Gilmore and Black have found it 'entitled to the highest priority,'[5] and the Supreme Court has said that the shipowner's liability therefor is among 'the most pervasive' of all. Aguilar v. Standard Oil Co., 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107 (1943). Given the facts of this case, our decision can certainly not be considered startling. The claims of seamen taken ill during the voyage for medical expenses and for wages they would have earned during the voyage are at least as meritorious as the claims for a statutory award of two months unearned wages after the voyage has ended. The latter claims are already within the first category under our prior holding, and the former, by this opinion on rehearing, become so also.[6]
 
 
 22
 Appellant's second major contention on rehearing is that in light of the price the vessel brought at forced sale, the 85,000 dollar salvage award is excessive; and that, in all events, it was error to allow the award to be summarily adjudged. We adhere to our previous reasoning that the Court was entitled to consider that this was a contracted, rather than a chance, salvage operation, made against a warranted value and not an auction value, and that under the facts of this case the 1966 summary judgment is not now reversible. However, since our disposition of the maintenance and cure question has caused the first category claims to have the potential to exceed the funds actually available should all those claims be found valid, execution of Merritt-Chapman & Scott's judgment must be stayed pending the lower court's decision regarding validity and relative priority of all those claims now in that category. We thus must reverse that part of the lower court's decision which removed the stay.
 
 
 23
 Finally, appellant correctly points out that we have overstated the case by finding that seamen's wage releases are contained in the record, and we withdraw that finding.
 
 
 24
 In conclusion, we reverse the placement of maintenance and cure claims in category 2 and direct that they be placed in category 1 and of a rank ahead of salvage; we reverse the lifting of the stay of execution on the salvage claim; we withdraw our finding concerning the presence of wage releases in the record; but, in all other respencts, we affirm the order appealed from.
 
 
 25
 Affirmed in part, reversed in part, and remanded.
 
 
 
 [1]
 The City of Tawas 3 F. 170, 172 (E.D.Mich.1880)
 
 
 [2]
 Gilmore and Black, The Law of Admiralty, Ch. IX 9-59 at 594 (1967)
 
 
 [3]
 The John G. Stevens, 170 U.S. 113, 119, 18 S.Ct. 544, 547, 42 L.Ed. 969 (1898)
 
 
 [4]
 It is true that this third reason finds little to recommend itself on the facts of this case, but as a general rule it would be so
 
 
 [5]
 The Law of Admiralty, Ch. VI 6-7 at 256
 
 
 [6]
 We make no judgment as to the merits of the Panamanian statutory claims. For purposes of this appeal, they are presumed to be valid to the extent they can be proven. Moreover, we make no change in the lower court's requirement that further proof of these claims be supplied. By now there has been ample time to obtain the necessary affidavits, unless the appeal has suspended the diligent efforts of counsel