JENKINS et al. v. UNITED STATES EMERGENCY FLEET CORPORA-
TION.

(District Court, W. D. Washington, N. D.　June 29, 1920.)

1. Seamen ☞7—Port of discharge north of Cape Hatteras is Atlantic port.

Under shipping articles for a voyage from New York "to a final port of discharge in the United States north of Cape Hatteras," held, that such port was one on the Atlantic coast.

2. Seamen ☞13—Entitled to transportation to port of discharge.

Where seamen signed for a voyage from New York to "one or more ports in South America * * * and such other ports or places in any parts of the world as the master may direct and back to a final port of discharge in the United States north of Cape Hatteras," and the ship fully discharged her cargo and reloaded at Tacoma and Seattle, and on refusal of the seamen to sign for a new voyage to Cuba discharged them, held, that they were entitled to transportation to New York.

In Admiralty.　Suit by I. W. Jenkins and others against the United States Emergency Fleet Corporation.　Decree for libelants.

James Kiefer, of Seattle, Wash., for libelants.

Robert C. Saunders, U. S. Atty., and Howard G. Cosgrove, both of Seattle, Wash., for respondent.

NETERER, District Judge.　On February 11, 1920, at the port of New York, the crew and master of the steamship Lake Flynus, operated by the United States Shipping Board Emergency Fleet Corporation, signed shipping articles bound—

"From the port of New York to one or more ports in South America, via coastwise ports and such other ports or places in any parts of the world as the master may direct, and back to a final port of discharge in the United States, north of Cape Hatteras."

The vessel sailed to South American ports, and then sailed to and delivered all of her cargo at the port of Tacoma, then sailed to the port of Seattle, where the vessel underwent repairs about the first of June, 1920.　Because of repairs being made upon the vessel, the crew was not fed upon the vessel after June 6, 1920, and the men were furnished, upon demand, funds with which to pay their board on shore. Some of the men, prior to June 15th, requested to be discharged, claiming that the voyage had ended.　A full cargo is loaded on the vessel for Cuba (a foreign port), and the men have been requested to "sign for the voyage," and declined.

The seamen, after refusal "to sign," were requested to report at the shipping commissioner's office and receive their wages.　Men were employed to take the place of the men who had requested to be relieved.　All of the men reporting at the shipping commissioner's office declined to receive the wages, unless furnished transportation to New York, the port of final discharge.

[1] It is contended on the part of the libelants that the port of Tacoma, where the entire cargo was discharged, was the final port of discharge, or at any rate the discharging of the entire cargo, and the

taking of the new cargo for the port of Cuba, was such a deviation from the voyage as abrogated the shipping articles and relieved the seamen from further service. The respondent contends that under the articles the ship had the right to call at the port of Tacoma or Seattle, to discharge or take cargo as it saw fit, inasmuch as the shipping articles provided that the ship may go to any port in the world, and the port of final discharge was definitely stated in the articles as north of Cape Hatteras, which all of the evidence shows means on the Atlantic Coast, and that, while the respondents agreed to the discharge of the libelants who so desired, it is not willing to pay transportation to New York.

[2] It is shown that the libelants were requested to sign "new articles" and refused. The shipping commissioner, on request of the agent of the respondent for a decision found that the seamen were entitled to transportation to New York. This fact, though, is not material here, except to show what the relation of the seamen to the voyage was considered to be by all parties. The vessel considered the voyage ended, or it would not have required the signing of the shipping articles as testified to by libelants, and not denied. The master, who, it is said, made this request, was not called, nor was his absence explained. The men were discharged through no act of commission or omission which would warrant such discharge. This was not the port of final discharge, and the men were not requested to continue on the voyage under the articles, but were requested to sign new articles for a new voyage. The vessel by its own conduct fixed the status of the men with relation to this proceeding, and they are entitled to their wages and board during detention, and transportation to New York, to such as desire to go to New York.