[No. 26512. Department Two. March 12, 1937.]

.F. Arwine, *Respondent*, v. Alaska Steamship Company, *Appellant*. [1]

*Bogle, Bogle & Gates* and *Claude E. Wakefield,* for appellant.

*Sam L. Levinson,* for respondent.

Robinson, J.—The respondent, a seaman, sued on his own behalf and as assignee of eight other seamen to recover wages arising out of his own and his assignors' employment on a vessel owned by the appellant.

[1]Reported in 65 P. (2d) 695.

438

Respondent and assignors signed shipping articles at Seattle on March 13, 1936, for a voyage to Alaska and return, at a stipulated monthly wage. The appellant was unable to secure an engine room crew because of a strike, and the voyage was cancelled. Respondent and his assignors were discharged on March 14, 1936. They were paid two days' wages. At the time of payment, which was made through the office of the shipping commissioner, the men and master of the vessel signed the release contained in the "Mutual Release Book," which reads as follows:

"Mutual Release, Department of Commerce, Bureau of Navigation, Shipping Service.

"We the undersigned seamen on board the S. S. Nizina on her late voyage from Ketchikan, Alaska, to Seattle, Washington, hereby each one for himself by our signatures herewith given in consideration of settlements made before the Shipping Commissioner at this port, release the master and owners of said vessel from all claims for wages in respect of the said past voyage or engagement, and I, master of said vessel do also release each of said seamen signing said release from all claims in consideration of this release signed by them.

"Dated March 14, 1936."

Each of the men had consulted an attorney before signing, and each noted a protest in writing.

The suit sought the recovery of a full month's wages by virtue of 46 U. S. C. A. § 594. This section is as follows:

"Right to wages in case of improper discharge. Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory

to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned.''

The appellant contended at the trial that this section is applicable only to situations where the owner is at fault; that, in any event, the execution of the release barred recovery, and that the assignments were insufficient.

The trial court ruled against the appellant on each of these contentions and entered judgment as prayed for. On appeal, the appellant assigns these rulings as error.

Appellant cites 46 U. S. C. A. § 593, which provides that a seaman shall not be entitled to further wages if a vessel be lost or wrecked, as indicating a Federal policy to the effect that wages cease when performance becomes impossible, and suggests that performance became impossible in this case.

█ The loss or wreck of a vessel renders a seaman's contract absolutely impossible of performance, and, in effect, the proximate cause of his discharge is the fortuitous action of the elements. No voluntary action of the owner is involved. A strike may but temporarily delay the voyage, and it may not even do that if the owner makes certain concessions. The decision as to whether or not the voyage shall continue may rest with him. There is evidence in this case that, if appellant had consented to employ more men in the engine room than it thought necessary, the voyage would have, and could have, been performed. Performance was not impossible, as it would have been if the vessel had been lost or wrecked, though, no doubt, it was highly inconvenient.

█ The appellant's argument, however, is mainly

based upon its construction of § 594. Appellant contends that this section provides for a penalty against the owner for wrongful discharge and insists that, unless the owner is in some way at fault, there can be no recovery. As tending to support that construction, it points out that in all suits brought under the section, where a recovery was allowed, there was some element of fault on the part of the owner, citing *The St. Paul,* 77 Fed. 998, *Brown v. United States,* 283 Fed. 425, *The Great Canton,* 299 Fed. 953, *Flanagan v. United States & Brazil Mail S. S. Co.,* 30 Fed. 202.

We think, however, that the statute does not provide a penalty but merely fixes the seaman's measure of recovery when his contract of employment is breached without his fault. The language seems too clear and definite to admit of any other construction. In any event, it was so construed in *The Steel Trader,* 275 U. S. 388, 48 S. Ct. 162, reported in 72 L. Ed. 326, under the title *United States Steel Products Co. v. Adams,* and we are bound by that decision.

The statute under discussion is one of a number of Federal statutes giving seamen rather unusual rights and remedies with respect to wages, such as the statute exempting seamen's wages from attachment and making assignments thereof before accrual void (46 U. S. C. A. § 601), and the statute giving them the right to demand and receive from the master one-half of the balance of the wages due them at every port where the vessel shall load or deliver cargo before the voyage is ended (46 U. S. C. A. § 597).

These wage statutes were enacted upon the theory that seamen needed special protection, and they have been liberally construed in their favor for the same reason. In fact, at the time of their enactment, seamen were regarded as being in need of a kind of guar-

dianship, for seamen are repeatedly spoken of in text books and law reports as "wards of the Admiralty." It is true that seamen have since acquired other and very efficient guardianship, particularly as regards wages, but these statutes are still in effect and must be enforced according to their original intent.

■ The respondent and his assignors signed the printed release in the Mutual Release Book and the words "under protest" appear written in ink after each signature. There are cases which seem to sustain appellant's contention on this branch of the case, such as in *The Charles D. Lane,* 106 Fed. 746, and *The San Lucas,* 1 Fed. Supp. 883, and others which sustain the rulings of the trial court, such as *Brown v. United States,* 283 Fed. 425, and *Caffyn v. Peabody,* 149 Fed. 294. The case of *The Charles D. Lane* may perhaps be distinguished from the case at bar upon the ground that the seaman's protest in that case was merely oral, while in this case the protests were entered in writing upon the release itself. In *The San Lucas,* it does not appear that any protest, oral or otherwise, was made at the time the release was executed.

But, independent of authority, it seems clear that the court's ruling should be sustained on principle. It is admitted that the respondent and his assignors were forced to sign the release in order to collect their two days' pay. They may not have been in a position to wait for these wages until the termination of a law suit. It is true that the amounts involved were small, but, under present economic conditions, they may have been sorely needed. The respondent and his assignors signed the release, but did so under compulsion, and they signified by protest, entered in writing at the moment of signing, that it was not their intention to accept the sums receipted for in full satisfaction of their claims.

We find nothing in the record to indicate that the assignments involved were insufficient.

The judgment appealed from is accordingly affirmed.

STEINERT, C. J., TOLMAN, HOLCOMB, and BEALS, JJ., concur.