RICHARD HOPKINS and Others, Plaintiffs, *v.* MOORE-MCCORMACK LINES, INC., Defendant.

City Court of New York, Special Term, New York County, June 25, 1940.

*William L. Standard,* for the plaintiffs.

*Charles H. Berg,* for the defendant.

RYAN, Ch. J.  Twenty-three seamen, each suing for one month's wages, have joined in this action based upon section 594 of title 46 of the United States Code (U. S. Rev. Stat. § 4527; chap. 322, act of June 7, 1872, § 21; 17 U. S. Stat. at Large, 266), which reads as follows: " Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case of having been improperly discharged, recover such compensation as if it were wages duly earned."

On April 5, 1940, the plaintiffs signed articles for a voyage on the steamship *Mormactide,* owned and operated by the defendant, to Bergen, Norway.  The vessel sailed from the port of New York

for Bergen on April 7, 1940. On April 10, 1940, the vessel then being on the high seas and not having reached Norwegian waters, the President of the United States issued a proclamation declaring all of Norway within a " combat area," pursuant to the Neutrality Act of 1939 (U. S. Code, tit. 22, § 245j). That law provides: " (a) That whenever the President or the Congress by concurrent resolution, shall find that there exists a state of war between foreign states, and that it is necessary to promote the security or preserve the peace of the United States or to protect the lives of citizens of the United States, the President shall issue a proclamation naming the states involved; and he shall, from time to time, by proclamation, name other states as and when they may become involved in the war." " § 245j–2 Combat areas. (a) Whenever the President shall have issued a proclamation under the authority of section 245j (a), and he shall thereafter find that the protection of citizens of the United States so requires, he shall, by proclamation, define combat areas, and thereafter it shall be unlawful, except under such rules and regulations as may be prescribed, for any citizen of the United States or any American vessel to proceed into or through any such combat area. The combat areas so defined may be made to apply to surface vessels or aircraft, or both. (b) In case of the violation of any of the provisions of this section by any American vessel, or any owner or officer thereof, such vessel, owner, or officer shall be fined not more than $50,000 or imprisoned for not more than five years, or both. Should the owner of such vessel be a corporation, organization or association, each officer or director participating shall be liable * * *. In case of the violation of this section by any citizen traveling as a passenger, such passenger may be fined not more than $10,000 or imprisoned for not more than two years, or both." It also provided under section 245j-1 (k): " The provisions of this section shall not apply to the current voyage of any American vessel which has cleared for a foreign port and has departed from a port or from the jurisdiction of the United States in advance of (1) the date of the enactment of sections 245j to 245j-19 or (2) any proclamation issued after such date under the authority of section 245j (a) or sections 245j to 245j-19; but any such vessel shall proceed at its own risk after either of such dates, and no loss incurred in connection with any such vessel or its cargo after either of such dates shall be made the basis of any claim put forward by the Government of the United States."

Inasmuch as the steamship *Mormactide* was already on the high seas when the Presidential proclamation of April 10, 1940, was issued, it was entitled in view of section 245j-1 (k), above quoted, to proceed to Norway at its own risk.

However, regulations of the Department of State should be considered. On November 6, 1939, the Department of State issued regulations in connection with the President's proclamation of November 4, 1939, declaring a state of war between Germany, France and the United Kingdom. Section 2 of the State Department Regulations of November 6, 1939, reads as follows: " Section 2. The provisions of the President's proclamation of November 4, 1939, do not apply to the current voyage of any American vessel which cleared for a foreign port in the combat area defined in that proclamation and which departed from a port or from the jurisdiction of the United States in advance of the date of the President's proclamation."

But on April 10, 1940, the Department of State issued the following regulation: " Regulations under section 3 of the Joint Resolution of Congress approved November 4, 1939, * * * promulgated on November 6 and November 17, 1939, henceforth apply equally in respect to travel into or through the combat area defined in the President's Proclamation of April 10, 1940; Provided, however, That the exceptions authorized [by paragraph numbered 2 of the regulations promulgated on November 6, 1939] shall not apply to American vessels which have cleared for a port or ports in the combat area but which had not entered that area prior to the date of the regulations in this section."

It thus appears that, if it were to obey the regulations issued on November 10, 1939, the vessel could not proceed into Norwegian waters.

The defendant chose to conform to the State Department regulations. On April 10, 1940, the vessel turned about, and came back to New York three days later.

These plaintiffs, finding themselves discharged when the ship arrived at the port of New York, although they had not earned one month's wages, now seek " a sum equal in amount to one month's wages as compensation " under section 594 of title 46 of the United States Code (U. S. Rev. Stat. § 4527).

Plaintiffs may have recovery under that statute only if they were wrongfully discharged. This is clear from a reading of the statute as well as from the cases construing it. (See *United States Steel Products Co.* v. *Adams*, 275 U. S. 388, and cases there discussed; *Calvin* v. *Huntley*, 178 Mass. 29; 59 N. E. 435, and *Tindle* v. *Davison*, [1892] 66 L. T. R. 372, in which case is considered the English statute from which the American was taken.) In other words, section 594 of title 46 of the United States Code affords a remedy only for " breach of contract " by the master or owner.

Was the defendant's refusal to take the ship into Norwegian waters after the issuance of the President's proclamation a breach of its contract with these plaintiffs who had signed articles for a voyage to Norway?

I think not, even though the regulations of the Department of State, making the proclamation applicable to ships which had already cleared port, transcended the scope of the Neutrality Act of 1939. If the ship had sailed into Norway it would have sailed into danger. Norwegian lands and waters were then occupied by German military and naval forces, German air forces were active, and there was fighting between the Germans, on the one hand, and the British and Norwegians, on the other hand, on land, sea and in the air. For the vessel to proceed to Norway would have imperiled not merely vessel and cargo, but lives of the men, these plaintiffs. In my opinion the owner of the vessel did the prudent and right thing by ordering her return to New York instead of allowing it to go forward to possible disaster.

I do not believe that the defendant owed a duty to these plaintiffs to examine with nicety into the question of law whether the regulations of the Department of State forbidding the vessel under the President's proclamation to proceed to Norway exceeded the authority conferred upon the executive branch of the government by the Neutrality Act of 1939. The vessel in question was proceeding under the American flag; these plaintiffs were American seamen under the protection of American law, and it was proper for all concerned, owner and seamen, to conform to the Presidential proclamation and the State Department regulations, which were so manifestly in accord with the expressed public policy of this country. The stated purpose of the Neutrality Act of 1939 (*supra*) is to "promote the security or preserve the peace of the United States or to protect the lives of citizens of the United States." By refusing to take the vessel into a "combat area" the defendant acted with a proper consideration for the public policy of this country, the view of both the legislative and executive branches of the government, and the belief of most of its citizens — a fact of which I take judicial notice — that it would be highly dangerous to the peace of the United States that a vessel flying the American flag enter the waters of the warring nations.

These plaintiffs should willingly have conformed to the public policy of the United States; they could not have properly expected that the ship proceed to Norway contrary to the interests of the United States without regard for the "peace" or "security" of the country. (Neutrality Act of 1939, *supra*.) They will not be heard to claim that in defiance of public policy they were ready and willing to take the ship to Norway.

The motion of the plaintiffs for summary judgment is denied.

The motion to strike out the first defense is granted. That defense does not properly plead the applicable statute, proclamation and State Department regulations, nor is the legal effect of the statute, proclamation and regulations correctly stated.

The motion to strike out the second defense is also granted. The single sentence constituting that defense contains nothing of legal consequence.

Defendant may serve an amended answer within six days after service upon its attorney of a copy of the order to be made herein. Order signed.