**OESCHLER et al. v. UNITED STATES NAVIGATION CO., Inc. et al.**

**No. 209 of 1951.**

United States District Court
E. D. Pennsylvania.

April 30, 1952.

Freedman, Landy & Lorry, Philadelphia, Pa., for libellants.

Krusen, Evans & Shaw, Philadelphia, Pa., for respondents.

KIRKPATRICK, Chief Judge.

This is an action in which each of the seamen libellants sues for a sum equal to one month's wages, as compensation under 46 U.S.C.A. § 594, dealing with the right to wages in case of improper discharge.

In a case presenting a substantially, but not exactly, similar situation, the Court of Appeals, Newton v. Gulf Oil Corp., 3 Cir., 180 F.2d 491, held that the word "discharge", as used in the act in question, means "the termination of the contractual obligations of a given set of articles" and that "discharge" and "signing off" are synonymous terms.

In the present case the libellants signed shipping articles at Baltimore on May 4, 1950, as members of the crew of the steamship "Fort Meigs". The articles described the vessel as "now bound from the Port of Baltimore, Md., to Aruba and one or more ports in the West Indies and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding Twelve (12) calendar months." The ship did not go to Aruba but went instead from Baltimore to Harbor Island, Texas, and returned to Philadelphia where the cargo was discharged. At Philadelphia, on May 18, 1950, the seamen were signed off and each man received his earned wages. They

protested and demanded the statutory one month's pay. So far, the facts are for all purposes identical with those in the Newton case.

The point of difference which the respondent contends takes this case out of the rule laid down by the Newton decision is that in the Newton case the men, on being signed off, were offered new articles for another voyage on the same ship but differing from the old articles in that they were for a coastwise voyage containing no mention of a foreign port. In the present case the respondent offered to continue the men in employment under the same articles. It may be assumed, although it is questioned by the libellants, that afterwards the vessel actually went from Philadelphia to Aruba—a matter which, I think, is immaterial.

The articles were terminated in the present case because the shipping commissioner in Philadelphia required the respondent to sign the men off. Even if it did so at the instance of the crew's representative (a point not proved), it would make no difference. The payment of the crew at Philadelphia was in accordance with, and in fact required by, law. Section 596 of Title 46 U.S.C.A. makes it obligatory to pay off within two days after the termination of the agreement under which the seaman was shipped in the case of "any vessel making coasting voyages". Note that the statute is not concerned with the voyage called for by the articles but with the voyage actually made. In this respect the section in question differs from that dealing with foreign voyages.

In the present case the "termination of the agreement" under which the crew shipped occurred when the voyage was completed or, what amounts to the same thing, when the vessel reached "a final point of discharge in the United States" as provided in the articles. There is no dispute that the cargo was discharged at Philadelphia. Although special circumstances have given somewhat varying meanings to the word "voyage", there is general agreement that, when a vessel transports a cargo from a point of origin and finally discharges it at its destination, that voyage is over.

Another reason why the men were entitled to be paid off and treat the agreement as terminated was that there had been a breach of the articles by the respondent. The articles plainly stated that, at the time the men signed on, the vessel was "*now* bound * * * to Aruba and one or more ports in the West Indies and such other ports and places in any part of the world" etc. Under the respondent's interpretation of this agreement, it could, without violation of the articles, keep the crew on coastwise voyages between ports in the United States until the year had almost expired and then fulfilled its agreement by making one voyage to Aruba. This, I think, was obviously not what the crew understood or what the contract meant.

I am of the opinion that this case is ruled by the Newton case and a decree for the libellants may be presented.