BERNUTH, LEMBECKE COMPANY, Inc., Claimant of THE S.S. "O. M. BERNUTH", Appellant,

v.

Arthur H. SERGEANT, et al., Appellees.

No. 15182.

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1955.

Robert Eikel, Houston, Tex., for appellant.

Bliss Daffan, Houston, Tex., for appellees.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

This is a suit in admiralty wherein libellants, seamen on the S.S. O. M. Bernuth, seek recovery of an additional month's wages under 46 U.S.C.A. § 594.[1] On May 15, 1953, while the vessel was at San Francisco, libellants signed Shipping Articles which, in pertinent part, provided:

"It is agreed between the Master and seamen * * * of the Steamship O. M. Bernuth * * * now bound from the port of San Francisco, California, on a tramp voyage to *a port or ports on the East Coast of the United States*, either *direct or* via Pacific Coast Ports, Mexican Ports, Ports in the Gulf of Mexico, Carribean Ports in the Panama Canal, Atlantic Coast Ports or ports in the Hawaiian Islands, in any order, at the Master's option, and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding six (6) calendar months." (Emphasis supplied.)

The facts are not in dispute, and, as found by the trial judge, may be summarized as follows: The vessel left San Francisco about May 15, and stopped at Balboa in the Canal Zone. There, on May 26, the Master was directed to proceed to Galveston (there being no cargo for her). While en route, on May 29, the Master received orders to proceed to Houston, lay up at a designated shipyard there and pay off the crew. The libellants were paid off at Houston on June 1, 1953, without fault on their part and before they had earned one month's wages. Pursuant to an agreement with the seamen's union, respondent (claimant of the ship) paid their expenses back to San Francisco.

In a memorandum opinion, the trial judge held that the contract was not for a foreign voyage but that it required a voyage to a port "on the East Coast of the United States"; that Houston was not such a port within the meaning of the Articles; that since the ship had not completed its voyage, the contract was breached and the libellants were "discharged" without fault. He granted libellants judgment for an additional month's wages, and respondent appealed.

The trial court held and the litigants agree that when seamen sign on for a voyage under articles such as those involved here, they can recover under the quoted statute only if they are without fault and if the vessel breaches the contract.[2] The appeal, then, raises the very narrow issue of whether or not the Port of Houston is a "port on the East Coast of the United States" within the meaning of the contract.

The trial judge was of the opinion that since the contract provided the vessel might proceed to the "East Coast" either directly or via, among others, "Ports in the Gulf of Mexico", the contract must be interpreted to exclude all "Ports in the Gulf of Mexico" as the ultimate port of discharge. Therefore, he concluded, the provision "East Coast of the United States" could only mean that part of the mainland which touches the Atlantic Ocean. Appellant, however, points out that the contract also provides the vessel might call at Atlantic Coast Ports, and

---

1. Insofar as it applies to this controversy, the statute provides:

    "Any seaman who has signed an agreement and is afterward discharged before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive in addition to any wages earned, a sum equal in amount to one month's wages as compensation as if it were wages duly earned."

2. See Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; The Steel Trader, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326; Newton v. Gulf Oil Corp., 3 Cir., 180 F.2d 491; The Golden Kauri, D.C., 28 F.Supp. 288.

it argues that the articles must be construed in the light of their purpose. This purpose, it is said, was to provide for a *tramp* voyage from San Francisco via any place in the world where a cargo might be found to a port of discharge in the United States. According to appellant's contention, the use of the expression "East Coast of the United States" was intended to distinguish the location of such a port from one on the west or Pacific Coast, not to limit the location of the port of discharge to the Atlantic Coast.

It cannot be disputed that the articles provide for a tramp voyage. Had there been no explicit provision to locate the ultimate destination of the vessel, we would be forced to agree with appellant, for the word "tramp" so used implies that there is no definite port of call or destination. See Pacific Employers Insurance Co. v. Parry Navigation Co., 5 Cir., 195 F.2d 372, 373. However, this agreement restricted the ultimate destination of the voyage to a port on the east coast. Hence, the fact that it otherwise provided for a "tramp" voyage affords no comfort for the appellant.

The articles are clear and unambiguous; and there is nothing in the quoted paragraph which sustains appellant's interpretation. The agreement simply provides that the vessel should proceed from San Francisco to an east coast port in the United States, and then it lists in general language the places where the vessel might, at the Master's option, make intermediate calls. There is no indication that the words "East Coast" should be given any construction other than their plain meaning. It cannot be disputed that the United States has a western coast, a southern coast and an eastern coast. As a matter of simple geography, Houston is a port on the southern, not the eastern, coast of the United States.

Whatever might have been their motive, those in control of the vessel contracted with libellants to make a voyage which would terminate on the eastern coast. The voyage was terminated at a port on the southern coast in violation of that contract, and the seamen were therefore "discharged" within the meaning of the statute.

The judgment is

Affirmed.