Joseph A. ZARRAGO

v.

TEXAS COMPANY.

Martin D. LADD

v.

TEXAS COMPANY.

George MARTIN

v.

TEXAS COMPANY.

Nos. 133, 135, 263 of 1958.

United States District Court
E. D. Pennsylvania.

March 11, 1960.

Sidney J. Smolinsky, Philadelphia, Pa., for libellants.

Bernard J. McNulty, Jr., Philadelphia, Pa., for respondent.

VAN DUSEN, District Judge.

The facts as developed in this case are not in dispute. The libellants, United States Merchant Seamen, joined the respondent's vessel, the SS. Illinois, at the port of Salem, Mass. On December 16, 1957, they signed on Articles in the presence of the United States Shipping Commissioner. The Articles provided, inter alia, as follows:

"It is agreed between the Master and the seamen, or mariners, of the SS. Illinois of which James W. McGulley, Lic. No. 191668 is at present Master, or whoever shall go for Master, now bound from the Port of Salem, Massachusetts, to one or more Atlantic Coast Ports and/or Gulf Coast Ports and/or one or more ports in the Caribbean and/or such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding twelve (12) calendar months." (Exhibit L–2).

The vessel proceeded from Salem, Mass., to Guayanville, Puerto Rico, a Caribbean Port. It returned directly to

Providence, Rhode Island, where the voyage terminated on December 28, 1957. At that time, each of the libellants signed off the Shipping Articles in the presence of the United States Shipping Commissioner and received his earned wages for the voyage, in each case the sums being less than the amounts which each libellant would have earned had he worked one full month.[1]

Each of the libellants then commenced an action under 46 U.S.C.A. § 594 to recover one month's wages. The statute on which libellants' claims are based is one of many interrelated and correlated statutes, codified in Title 46 United States Code Annotated, Chapter 18, which deal exclusively with the shipment, wages and discharge of merchant seamen.

Section 594 provides as follows:

"Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

While normally § 594 is not applicable to a coastwise voyage because of the limitation contained in § 544,[2] it is applicable to the voyage in question because of the provisions contained in § 563,[3] which reads, inter alia, as follows:

"* * * shipping commissioners * * * *may* ship crews for any vessel engaged in the coastwise trade, or the trade between the United States and * * * the West Indies, * * * at the request of the master or owner of such vessel. (When this is done) * * * an agreement shall be made with each seaman * * * and such seaman *shall be discharged* and receive their wages as provided by * * * 593–595 * * * of this title; * * *." (Emphasis supplied.)

While it is true that shipping commissioners are not under obligation to ship crews on voyages to the West Indies or of a coastwise nature, once the master or owner of the vessel requests their presence, § 563 grants the seamen all rights which are conferred by § 594.

It is settled law that there must be a breach of the Shipping Articles before a seaman is entitled to recover under § 594. The Steel Trader, 1928, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326; Newton v. Gulf Oil Corp., D.C.E.D.Pa. 1949, 87 F.Supp. 210, affirmed 3 Cir., 1950, 180 F.2d 491, certiorari denied 1950, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598. Libellants claim that § 594 makes

---

1. This statement of facts is consistent with respondent's Requests for Findings of Fact Nos. 1–5 (Document No. 13) and libellants' Requests for Findings of Fact Nos. 1, 3–8, and 17 (Document No. 11), and these Requests are affirmed by the court. In addition, this court affirms libellants' Requests for Findings of Fact Nos. 2, 9–12, 15 and 16. This court denies libellants' Requests for Findings of Fact Nos. 13 (the Particulars of Discharge are not included in Exhibit L–2), 14 (the Official Log is not in evidence), and 18. Respondent's Requests for Findings of Fact Nos. 6 and 7 seem more properly categorized as Conclusions of Law and are affirmed as such. In addition, the court makes the

following Findings of Fact: (A) Libellants Zarraga and Martin were discharged without fault on their part (N. T. 28); and (B) The record fails to disclose that libellant Ladd was not discharged because of fault on his part.

2. Section 544 provides, inter alia:
"None of the provisions of sections 201–203, 542a, 543, 545, 546, 561, 562, 564–571 * * * 591–596 * * * of this title shall apply to sail or steam vessels engaged in the coastwise trade * * *."

3. It will be noted that § 563 is not within the enumerated sections set forth in § 544.

it an implied term of all Shipping Articles that the voyage will be of at least one month's duration unless the Articles expressly state it may be shorter. Since the voyage of the SS. Illinois did not last one month and the only statement in the Articles with respect to time was that the voyage would not exceed 12 months, libellants claim they have established the breach necessary to recover under § 594. They have not urged upon this court, nor does it appear from the record, that there were any other breaches of the Articles in question. Therefore, their right to recover depends upon the correctness of their interpretation of § 594.

This question has not been passed upon in this Circuit. In Newton v. Gulf Oil Corp., supra, the U. S. Court of Appeals for the Third Circuit expressly reserved decision on this matter, stating at pages 493–494 of 180 F.2d:

"We have no doubt that the libelants in this case come within the terms of the statute. The voyage was changed and they were discharged before earning a month's wages. That they probably could not show, in an ordinary action of contract, damages which amounted to as much as a month's pay is not the question. They are suing for damages which have been liquidated by legislative enactment.

"The libelee predicts that if the decree in this case is sustained, a ship owner will not be able to sign on men for a foreign voyage for less than a month in duration without becoming liable under the statute. The libelants reply that this case presents no such problem and has in it no such implications because this ship owner did not take the voyage which the articles called for. In other words, there was a technical breach of the contract. If this is not a sufficient answer to the libelee's fears we shall make the answer if and when the problem is presented for decision."

In Oeschler v. United States Navigation Co., D.C.E.D.Pa.1952, 106 F.Supp. 992, the court was again spared the necessity of deciding this question because there was another breach on which to base recovery under the statute.

Other courts have had occasion to consider this problem, however, and have ruled contrary to libellants' contention. The first case was Moore v. Marine Transport Lines, D.C.S.D.Tex.1950, 1950 A.M.C. 1592. In that case, Articles provided for a voyage from San Francisco "to one or more ports in the Canal Zone and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States, for a term of time not exceeding twelve (12) calendar months." These Articles were signed on December 29 and 30, 1948. The ship made a voyage to the Canal Zone and then to Houston, Texas, where the crew was discharged on January 18, 1949. The libellant contended that he was entitled to one month's wages under § 594 since he was discharged before earning that amount. The court held that the voyage and the length of employment were as contracted for in the Shipping Articles, stating at pages 1593–1594:

"* * * I conclude that the weight of authority is that such section only gives seamen the right to have and recover an additional month's wages when their contract has been violated. Here their contract has not been violated. The voyage and length of their employment were as stipulated in the articles."

Chief Judge Kennerly reiterated the position he took in the Moore case, supra, when the point was again raised in Sergeant v. The O. M. Bernuth, D.C.S.D. Tex.1954, 122 F.Supp. 589, affirmed Bernuth, Lembecke Co. v. Sergeant, 5 Cir., 1955, 217 F.2d 704. There the judge found that the voyage made did not conform with that described in the Articles, thereby constituting a breach which enabled the libellants to recover under §

594, but stated by way of dictum at page 592 of 122 F.Supp.:

> "Libellants say that the Contract between libellants and respondents was violated, in that the voyage was too short in point of time and that libellants were improperly discharged. The only provision in the Contract fixing the length of the time of libellants' employment thereunder is found in the last sentence of the quoted portion of the Shipping Articles. It is said that the term of employment shall not *exceed* 'six calendar months.' Therefore, libellants were not improperly or wrongfully discharged because discharged within 15 or 20 days after the voyage was begun."

The Moore decision was also quoted and followed in Lucadou v. United States, D.C.S.D.N.Y.1951, 98 F.Supp. 946, which was recently cited with approval in an alternative holding in Beattie v. American Trading & Production Corp., D.C. S.D.N.Y.1959, 174 F.Supp. 596.

■ Also, it is significant that § 167 of the British Merchant Shipping Act of 1854, on which the United States statute was based,[4] has been interpreted as not implying a minimum voyage where the seaman agrees to any period not exceeding a stated maximum. In Tindle v. Davison, 66 L.T. 372 (1892), the court denied recovery under the British Statute where the Articles described the course of the voyage and stated that the "Term of employment may be for any period not exceeding six months." The defendant argued (p. 374):

> "Sect. 167 of the statute of 1854 only goes to the remedy in the case of improper discharge; it does not extend to introduce a time-maximum of a month into the employment of seamen."

It is not clear whether the court approved this argument or merely considered the wording of the contract sufficient to overcome any implied, minimum duration. It stated at page 374, "According to this contract the engagement might last fourteen days, it might last four months; but at the conclusion of the voyage, the contract was at an end." Libellants can find no comfort in either interpretation of the court's holding as the words in the English Articles "may be for any period," which are omitted in the Articles of the case at bar, would seem to be plainly implied in these Articles.[5]

■ The decisions from the Southern Districts of New York and Texas, while not binding on this court, are entitled to considerable weight. Even though the question presented is sufficiently close so that reasonable jurists could differ, the trial judge feels that a single standard of conduct in this area is important and, since this judge is not persuaded that these decisions are wrong, he will follow them.

The libellants rely primarily upon the history of favored treatment to seamen in the construction of these statutes to support their contentions. See Isbrandtsen Co. v. Johnson, 1952, 343 U.S. 779, 72 S.Ct. 1011, 96 L.Ed. 1294; Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; Garrett v. Moore-McCormack Co., 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; The Steel Trader, 1928, 275 U.S. 388, 48 S. Ct. 162, 72 L.Ed. 326. This court agrees with the policy expressed in these cases but it fails to see how seamen in general will be helped in any significant way by the interpretation urged by the libellants when they admit in their brief (Document No. 12, at page 8) that the ship owners could neutralize its effect by simply inserting a minimum duration provision in all of their Articles. Once again seamen would be prone to the "economic and social consequences which

---

4. See Congressional Globe, March 26, 1872, p. 1836.

5. The phrase "a term of time" in these Articles indicates "any period." 1 Norris, The Law of Seamen, §§ 365–372, also supports respondent's contentions. See, particularly, § 368(a) in the 1958 supplement, which approves the Lucadou decision, supra.

are inherent in discharge at a distant port when the seaman does not have sufficient funds to adequately sustain life until he secures new employment" (libellants' brief, page 6). The temporary nature of the victory libellants would obtain if this court adopted their position hardly seems to supply the basis for departing from the view subscribed to by two other federal courts and the British court.

On the other hand, the more restricted interpretation of § 594 urged by the respondent does endow seamen with rights which cannot be rendered nugatory by the simple expedient of inserting another sentence into the Articles. It provides liquidated damages wherever there has been a breach and no voyage or a voyage of less than one month's duration.[6] The fact that the application of § 594 is limited so that it does not apply where there has been a breach and a voyage of greater than one month can be explained when one recognizes that the longer a seaman works, the more savings he will accumulate to provide a cushion to tide him over until he obtains employment again.

In conclusion, it is noted that there are arguments supporting the contentions of both sides with respect to the difficult legal question involved in this dispute. Because other courts have considered the point, however, and are in agreement in refuting libellants' view, this court is constrained to follow them, recognizing, as it does, the importance of uniformity in this area of the law. In doing so, the holdings of these courts need only be given a narrow scope. The Articles in each of these five cases all contain words to the effect that the voyage was to last for a "term not exceeding" a certain number of months. The courts may well have felt that these words were sufficient to negate any minimum voyage duration implied by § 594.[7] Thus, the trial judge does not pass on the situation in which the Articles are completely silent as to time or do not use words from which it is fair to infer that any period of time up to the maximum was meant.

Accordingly, judgment will be entered against libellants Joseph A. Zarraga, Martin D. Ladd, and George Martin, and in favor of respondent, The Texas Company.[8]

6. This court is troubled by the fact that it can be argued that Congress treated the situation in which there is no voyage at all and that in which one month's wages have not been earned as being identical for purposes of invoking § 594. If there was no voyage at all, this itself would necessarily supply the breach which conditions recovery, providing, of course, that no justifying excuse is shown. From this it can be argued that Congress also intended that a voyage of less than a month would also constitute a breach, subject again to the lack of justification, and that it would not be necessary to show a breach in any other respect, just as in the case where no voyage is taken at all. The only answer to this is to question the validity of the initial premise that Congress considered the two situations as being identical.

7. See the discussion concerning Tindle v. Davison, supra, at pages 7 & 8 of this opinion. The reliance of the Moore decision on Farrell v. United States, 1949, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850 possibly argues for a broader construction of the holding in Moore. In the

Farrell case, it was said at page 521 of 336 U.S., at page 712 of 69 S.Ct., with respect to Articles providing for a voyage for a "term of time not exceeding 12 (twelve) calendar months" that "The twelve-month period appears as a limitation upon the duration of the voyage and not as a stated period of employment." The court stressed that seamen customarily sign for the voyage and not a specific period of time. Thus it would seem that the twelve-month clause was treated as having nothing to do with the duration of the contract other than providing a ceiling on it.

8. The court affirms respondent's Requests for Conclusions of Law 1–4 and respondent's Requests for Findings of Fact 6 and 7, which this court considers Conclusions of Law (see footnote 1). It also affirms libellants' Requests for Conclusions of Law 1–3, denies 4, and expresses no opinion as to 5 and 6, since no ruling on them is required for the decision of this case. It seems clear that the libellants consented to a voyage of any duration less than a year by signing the Articles (L–2).