**Joseph A. ZARRAGA, Appellant in No. 13226,**
**Martin D. Ladd, Appellant in No. 13,227,**
**George Martin, Appellant in No. 13,228,**

v.

**TEXAS COMPANY, Appellee.**

**Nos. 13226–13228.**

United States Court of Appeals Third Circuit.

Argued Oct. 4, 1960.

Decided Nov. 7, 1960.

37.  256 F.2d 721.

Sidney Smolinsky, Philadelphia, Pa., for appellants.

William C. Schultz, Jr., Philadelphia, Pa. (Eugene R. Lippman, Krusen, Evans & Shaw, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

These are appeals from three decrees of the District Court for the Eastern District of Pennsylvania [1] denying recovery to each libellant of a month's wages sought pursuant to 46 U.S.C.A. § 594.[2] They present the following questions: First, does Section 594 require proof that the shipping articles were breached before a recovery may be had; and second, assuming such a breach must be shown, should Section 594 be read into the shipping articles so as to create as an implied term thereof the provision that the voyage contracted for will be at least of one month's duration? The District Court answered the first question in the affirmative and the second in the negative.

The facts are simple and undisputed. On December 16, 1957, at the Port of Salem, Massachusetts libellants signed shipping articles in the presence of a United States Shipping Commissioner on the S.S. Illinois. The articles provided, inter alia:

"It is agreed between the Master and the seamen, or mariners, of the S.S. Illinois of which James W. McGulley, Lic. No. 191668 is at present Master, or whoever shall go for Master, now bound from the Port of Salem, Massachusetts, to one or more Atlantic Coast Ports and/or Gulf Coast Ports and/or one or more ports in the Carribean and/or such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge in the United States,

1. Joseph A. Zarraga, Martin D. Ladd and George Martin each filed a separate libel against the Texas Company. The opinion of the District Court is reported in 1960, 182 F.Supp. 589.

2. Title 46 U.S.C.A. § 594 provides as follows:

"Right to Wages in case of improper discharge

"Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or be-

fore one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned."

for a term of time not exceeding twelve (12) calendar months."

The vessel proceeded from Salem, Massachusetts to Guayanville, Puerto Rico, a port in the Caribbean Sea. It then returned directly to Providence, Rhode Island, where the voyage terminated on December 28, 1957. There each of the libellants signed off the articles in the presence of a United States Shipping Commissioner and received his earned wages which were less than he would have earned had he worked a full month. Each of the libellants then commenced an action to recover one month's wages for the alleged improper discharge under Section 594.

The legislative history of Section 594 (Act of June 7, 1872, c. 322, Section 21, 17 Stat. 266) discloses that it was substantially derived from Section 167 of the British Merchant Shipping Act of 1854.[3]

In Tindle v. Davison, 66 L.T.N.S. 372 (Q.B. Div. 1892) the British court had occasion to construe Section 167. There the shipping articles provided for a voyage

"* * * from Sunderland to Bilbao and to any port or ports, place or places within the limits of 73 degrees north latitude and 60 degrees south latitude trading to and fro, if required, and back to a final port of discharge in the United Kingdom. The term of employment may be for any period not exceeding six months."

The libellant was employed on August 21, 1891 and was discharged on September 12, 1891, after having completed the voyage to Bilbao. In reversing the judgment of the lower court permitting recovery of the balance of a month's wages under Section 167, the court held, at page 374, per Wright, J.:

"The section requires evidence of his having been improperly discharged, and there is no such evidence here. The meaning of the section is that when a seaman is improperly discharged, he is to have due compensation up to a month's wages in lieu of his right of action, unless he has earned a month's wages, in which case the section does not apply."

It is thus apparent that the British court construing the act upon which the instant statute is based held that a breach of the articles is a prerequisite to recovery.

In The Steel Trader, 1928, 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326, a breach of the shipping articles had occurred and the libellant had been paid both the wages actually earned and those for an extra month as provided in Section 594. Thereafter he instituted a suit to recover the wages he would have earned had he completed the voyage. In reversing the trial court which had granted recovery, the Court said, at page 391, 48 S.Ct. at page 163:

"The word 'compensation,' in section 4527 [Section 594], distinctly indicates that payment of a sum equal to one month's wages was intended to constitute the remedy for an invasion of the seaman's right through *breach of his contract* of employment in the circumstances specified." (Emphasis supplied.)

The Court quoted with approval the language in Calvin v. Huntley, 1901, 178 Mass. 29, 32, 59 N.E. 435, 436 that "[T]he object of the statute is not to

3. It was developed in The Steel Trader, 1928, 275 U.S. 388, 48 S.Ct. 162, 163, 72 L.Ed. 326. The British Act is as follows:

"Any seaman who has signed an agreement, and is afterwards discharged before the commencement of the voyage, or before one month's wages are earned, without fault on his part justifying such discharge and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, due compensation for the damage thereby caused to him, not exceeding one month's wages, and may, on adducing such evidence as the court hearing the case deems satisfactory of his having been so improperly discharged as aforesaid, recover such compensation as if it were wages duly earned."

punish, but to provide a reasonable rule of compensation for a *breach of contract.*" (Emphasis supplied.)

In Newton v. Gulf Oil Corp., 3 Cir., 1950, 180 F.2d 491, 494, certiorari denied 1950, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598, this court affirmed a judgment recovered under Section 594. The present issue was not reached in that case because it was noted that "there was a technical breach of contract."

In other courts where this issue has been directly decided it has been held that a breach of contract is a prerequisite to recovery,[4] and where recovery has been permitted the facts reveal a breach of contract.[5]

■ The libellants argue that since the statute is remedial in nature it should be given a liberal construction. We have no quarrel with this position but we point out that even in construing a remedial statute we are bound by legislative intent. That intent was clearly stated in Vlavianos v. The Cypress, 4 Cir., 1948, 171 F.2d 435, at page 439, where the court said:

"The statute was intended to afford a simple summary method of establishing and enforcing damages which are frequently difficult of definite ascertainment but are fixed by the statute as complete satisfaction for the breach."

It is therefore clear, as found by the district court, that a breach of the articles is a prerequisite to recovery under Section 594.

The second question to be decided is whether by reason of Section 594 there is an implied guarantee in all shipping articles that a voyage will be of such duration as to enable a seaman to earn a month's wages. In urging an affirmative response to this question the libellants contend that "existing statutes and judicial precedents must be read into all contracts as if they were expressly contained therein." Although we do not doubt the validity of that principle it affords the libellants no comfort for we must still decide what the "existing statutes and judicial precedents" provide. Since we have concluded that Section 594 merely provides a statutory measure of liquidated damages that is all we can and do read into the articles.

In fact this precise issue was decided in the English case of Tindle v. Davison, *supra.* In that case the libellant argued:

"This agreement contemplates a duration of at least a month, and the plaintiff had a right to earn a month's wages." 66 L.T.N.S. at page 374.

The defendant in opposing that contention argued:

"Section 167 of the Statute of 1854 only goes to the remedy in case of improper discharge; it does not extend to introduce a time minimum of a month into the employment of a seaman." 66 L.T.N.S. at page 374.

Since the court in Tindle reversed the judgment below granting the libellant the balance of a month's wages it is apparent that the libellant's contention was not accepted.

The case of Moore v. Marine Transport Lines, 1950 A.M.C. 1592 (S.D.Tex.1950) stands directly opposed to libellants' posi-

4. See, e. g., Beattie v. American Trading and Production Corp., D.C.S.D.N.Y.1959, 174 F.Supp. 596; Lucadou v. United States, D.C.S.D.N.Y.1951, 98 F.Supp. 946; Moore v. Marine Transport Lines, 1950 A.M.C. 1592 (S.D.Tex.1950); Prockl v. National Bulk Carriers, Inc., Sup.Ct.App.Term 1951, 110 N.Y.S.2d 265; Hopkins v. Moore-McCormick Lines, City Ct.1940, 175 Misc. 109, 22 N.Y.S.2d 72, affirmed 1941, 262 App.Div. 722, 28 N.Y.S.2d 710 and Arwine v. Alaska S.S. Co., 1937, 189 Wash. 437, 65 P.2d 695.

See also 1 Norris Law of Seamen, Sec. 368(a) (1958 Supp.).

5. See, e. g., Bernuth, Lembecke Co. v. Sergeant, 5 Cir., 1955, 217 F.2d 704; Vlavianos v. The Cypress, 4 Cir., 1948, 171 F.2d 435; Newman v. United Fruit Co., 2 Cir., 1944, 141 F.2d 191; Oeschler v. United States Navigation Co., D.C. E.D.Pa.1952, 106 F.Supp. 992, and Bagley v. United States, D.C.S.D.Cal.1948, 77 F.Supp. 260.

tion.[6]  There the articles provided for a voyage from San Francisco to

" * * * one or more ports in the Canal Zone and such other ports and places in any part of the world as the master may direct, and back to a final port of discharge in the United States for a term not exceeding twelve (12) calendar months."

These articles were signed on December 29 and 30, 1948.  The ship made a voyage to the Canal Zone and then to Houston, Texas, where the crew was discharged on January 18, 1949.  The libellant argued that he was entitled to one month's wages under Section 594 since he was discharged before earning that amount.  The court held at pages 1593-94:

" * * * I conclude that the weight of authority is that such section only gives seamen the right to have and recover an additional month's wages when their contract has been violated.  Here their contract has not been violated.  *The voyage and length of their employment were as stipulated in the articles.*"  (Emphasis supplied.)

All the libellants' arguments raised before the district court and repeated here add up to the proposition that Section 594 operates upon the articles so as to guarantee the seaman a minimum of a month's wages.[7]  The district court refused to sustain these arguments and we agree.  Accordingly the decrees of the district court will be affirmed.

6. See also Sergeant v. The O. M. Bernuth, D.C.S.D.Tex.1954, 122 F.Supp. 589, affirmed Bernuth, Lembecke Co. v. Sergeant, 5 Cir., 1955, 217 F.2d 704.

7. The libellants belabored the point that the district court erred when it "held there was no breach of the articles because the voyage made by the SS. 'Illinois' was within the purview of the Articles."  They further submitted that the trial court reasoned (allegedly erroneously) that "it was fairly inferred from the language of the Articles that for a time not exceeding twelve (12) calendar months meant for any period of time less than twelve calendar months."  What the court did say was:  "The

phrase 'a term of time' in these Articles indicates 'any period'."  182 F.Supp. at page 592, n. 5, and '[i]t seems clear that the libellants consented to a voyage of any duration less than a year by signing the Articles."  Id., at page 593, n. 8.  In any event whether or not "a" means "any" the result in this case is the same, because "a" in the context used does not mean, as the libellants contend, at least a month.

The libellants also raised the issue that the burden of proving fault and consent rested with the respondent.  The district court found, as we do, that no ruling thereon is required in view of the present disposition of the case.