Edward W. NELSON, Libelant,

v.

MOORE–McCORMACK LINES, INC.,
Respondent.

United States District Court
S. D. New York.
June 14, 1961.

Murray Gartner, New York City, for libelant.

Burlingham, Underwood, Barron, Wright & White, New York City, for respondent.

THOMAS F. MURPHY, District Judge.

This is an action by a seaman, a radio operator, against Moore-McCormack for damages arising out of the latter's alleged breach of contract.

On August 23, 1955, libelant signed on the S.S. Mormacrey, respondent's vessel, as radio officer. The shipping articles called for a voyage from San Francisco where he signed on, to South American ports, "and such other ports and places in any part of the world as the Master may direct, and back to a final port of discharge *on the west coast of the United States*, for a term of time not exceeding nine months." (Emphasis supplied.) When in Rio on the last leg of this voyage the Mormacrey was transferred by its owners to the Atlantic coast service and another ship transferred from the

Atlantic coast to the Pacific coast service. At this time, in Rio, the masters and chief officers of the two vessels changed ships; the crew did not. The Mormacrey then proceeded to New York where it discharged the cargo and on October 24, 1955, paid off the crew. In accordance with schedules in union collective bargaining agreements, respondent also paid the crewman for return transportation to the west coast, including wages and subsistence incident thereto.

All of the crew except libelant appeared and signed off the articles when they were terminated by the vessel at this time in New York, which, though not so contemplated under the articles, was made to be the port of final discharge. The regular radio officer, because of whose absence libelant was temporarily assigned to the ship, had not as yet returned from his home on the west coast, and libelant was therefore cleared by his union for a coastwise trip lasting from October 25th to November 13, 1955. Such a trip did not require the signing of articles. 46 U.S.C.A. § 544. His accrued wages remained unclaimed by him throughout this period since October 24th. On November 14th the regular radio man had returned and new articles were to be opened that day for a foreign voyage. At this time libelant insisted that the articles he signed on August 23, 1955, remained in effect as to him since he had not signed off them on October 24th with the rest of the crew and moreover, respondent could not, he claimed, legally terminate those articles at that time. He sought unsuccessfully to be permitted to sign the newly opened articles, and then refused to remove from the ship. He did so, however, when ordered off the next day by the chief mate. Upon his removal he demanded of respondent's agent his accrued wages that he neglected to claim on the 24th (he had been theretofore duly paid upon his request for the coastwise trip which ended on November 13th). Respondent advised him that his wages could be obtained during business hours upon presentation of a mutual release obtainable from the Coast Guard Shipping Commissioner. The latter officer suggested to libelant that he sign such release "under protest" and that he would then receive his pay. Libelant did not do so, but instituted this action some eight months thereafter.

It is libelant's claim that he was unlawfully discharged, contrary to the articles, at New York. His contention is that he could not be discharged in New York since the articles contemplated returning to the west coast. He says that respondent was not at liberty to terminate the voyage at New York on October 24, 1955, nor was that accomplished when cargo was discharged and the crew paid off. Libelant argues that New York was not a final port of discharge permitted by the articles, and he insists he had a right to continue aboard until the vessel terminated that voyage properly on the west coast of the United States or until the expiration of nine months, whichever was sooner. Here, of course, it would be the expiration of nine months since the ship did not sooner return to the west coast.

Libelant claims wages and subsistence from the time of his alleged unlawful discharge (November 15, 1955) to the expiration of the nine month limitation of the voyage plus an allowance for wages and travel from New York to San Francisco. In addition he claims statutory penalties for the alleged unlawful withholding of his accrued wages, contrary to Sections 596, 597, of Title 46 U.S.C.A., and also, overtime pay for unlawful detention aboard ship at Ilheus, Brazil. His testimony about the overtime is that when in Ilheus the ship posted its sailing board showing a sailing date for Saturday and the ship never took the board down or changed the time, and did not sail for some 72 hours thereafter. In this connection respondent's testimony is that at the time libelant claimed the overtime it was because of the failure of the ship to have launches available in Ilheus for going ashore and that he was disallowed it for two reasons: (1) he went ashore, and (2) the master had re-

ceived a letter from the Port Captain which he posted to the effect that no launches were available.

The master testified, and the logs supported him, that the sailing board notices were appropriately posted and changed, and that only six hours really elapsed between the actual posted time and the sailing, and this was occasioned by the fact that the ship started to drag anchor and they spent considerable time getting a firmer anchorage.

■ We may dispose of this latter claim for overtime briefly, before discussing the main problem: we accept libelant's testimony that he did not go ashore at Ilheus, but we accept too the master's testimony about the posting of the sailing boards and the need for a firmer anchorage. The result is that libelant has failed to sustain his burden on such claim.

■ The "final port of discharge" is the port whereat the ship is relieved of her cargo and becomes ready for the next venture. The Larimer, 174 F. 429 (E.D.Pa.1909). The port of New York was not contemplated as a port of final discharge by the articles; such a port was clearly destined to be on the west coast. Unequivocally nonetheless, New York was constituted the port of final discharge and the voyage there terminated on the 24th of October, albeit, in breach of the articles. Cf. Bermuth, Lembecke Company v. Sergeant, 217 F.2d 704 (5th Cir., 1955); Schermacher v. Yates, 57 F. 668 (E.D.N.Y.1893). The only question to our mind is libelant's damages therefor.

What libelant contends for here is a rule that would preclude a vessel from terminating a voyage at a place different than that set forth in the articles without incurring a liability thereby to each dissenting member for wages and subsistence possibly for the entire balance of the maximum period of time prescribed by the articles for the continuance of the voyage. Libelant does not dispute the right of the vessel to terminate the voyage prior to the expira-

tion of that outside time limitation, but only disputes the owner's right to terminate at a place different than that specified in the articles.

Libelant is correct insofar as he charges respondent with a breach of the articles in terminating at a place not within the articles. But we disagree with his contention as to the consequences that attend that breach, in support of which, we note, he cites no apposite authority.

There are two lines of cases relied upon by libelant that we may briefly demonstrate to be no support for the rule he proposes. The first line, of which Bernuth, Lembecke Company v. Sergeant, 217 F.2d 704 (5th Cir., 1955) is representative, relates to the right of a seaman to an extra month's wages in the event of wrongful discharge before the commencement of the voyage or before he has earned one month's wages, as provided in 46 U.S.C.A. § 594. In the cited case the articles provided for a voyage from San Francisco which ultimately was to terminate on the east coast of the United States. The voyage was not to exceed six months. The vessel left San Francisco and without touching the east coast and in less than a month after departure the voyage was terminated at a port on the southern coast of the United States in violation of the articles. It was held that the seamen were discharged and the articles breached within the contemplation of 46 U.S.C.A. § 594, and thus the seamen who did not consent to the breach were entitled to the additional month's pay. In accordance with union agreements the seamen also received expenses back to San Francisco. There is no mention in the case of any claim or entitlement to further damages than those awarded. Libelant is helped in no way by that case and others in accord with it which are bottomed on that particular statute, which by the way is not applicable here because the instant voyage was not terminated within a month of its commencement.

The other line of cases cited by libelant involve seamen's actions for wrongful

discharge in which the measure of damages was held to be, *inter alia,* wages until the end of the voyage that continued subsequent to the discharge of the particular seamen. Aird v. United States, 216 F.2d 149 (3rd Cir., 1954); Forster v. Oro Navigation Co., 128 F.Supp. 113 (S.D. N.Y.1954), aff'd 228 F.2d 319 (2d Cir., 1955); Yancey v. United States, 77 F. Supp. 600 (S.D.N.Y.1948). The distinction is that here the voyage was terminated as to the entire crew, all of whom were discharged. Wages until the end of the voyage in substance is what was offered and paid to all of them, except libelant who declined ultimately to accept it.

In our opinion, when a shipowner terminates a voyage at a place other than specified in the articles, and here we add, though not controlling, that the ship's action was not arbitrary or capricious but rested upon a reasonable basis in fact, he must make appropriate compensation for the legal damages that his election would visit upon the crewmen. Stated differently, libelant may recover for a breach of the articles only his legal damages resulting therefrom. In this case the consequences of respondent's termination in breach of the articles was to entitle the crew to their discharge and to transportation to the west coast together with wages and board incident to that journey. Cf. Jenkins v. United States Emergency Fleet Corp., 268 F. 870 (W.D.Wash.1920); Murphy v. American Mail Line, 62 F.Supp. 97 (W.D. Wash.1945). Libelant's damages here are exactly what respondent offered him from the very beginning.

We come finally to the claim for penalty wages based upon respondent's failure to pay libelant his accrued wages at the time of his discharge. The statute, 46 U.S.C.A. § 596, requires that the master or owner of vessels making foreign voyages shall pay to the seamen their wages "within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; * *." If payment is not made in the specified manner and the neglect or refusal is "without sufficient cause," two days' pay for each day of delay by the master or owner shall be paid to the seaman.

The wages in dispute here are those earned by libelant for the voyage which was terminated on October 24, 1955. In accordance with the quoted portion of the statute above, respondent was required to pay libelant those wages within twenty-four hours after the discharge of the cargo because that event was the first to happen, i. e., libelant was not discharged at that time, and not discharged until November 14th. There is no dispute that libelant's wages were available on October 24th; that the voucher was already made up and that libelant did not ask for his pay. Within the time limited by the statute there occurred no event that would put respondent in default and thus render respondent liable to the penalties therein prescribed. Cf. McCrea v. United States, 294 U.S. 23, 31–32, 55 S.Ct. 291, 79 L.Ed. 735. Any failure to pay within the statutory period was due entirely to the conduct of libelant, and in our opinion, his claim for statutory penalties is therefore baseless. Going further, however, and treating of the neglect or refusal of respondent to pay libelant at the time of his discharge on November 14th, we find that there too, respondent's actions in requiring libelant to present the mutual release prior to payment was reasonable and did not amount to a refusal or neglect to pay without sufficient cause. Libelant had refused to sign off on the articles or to sign the requested release because he felt that he would thereby waive his rights to sue for breach of the articles although it is not disputed that the shipping commissioner explained to him how he could sign "under protest" and that there would be no trouble about being paid or being able to sue. It was shown also that the mutual release that respondent required was the form that the shipping commissioner made seamen sign in the event they did not sign off on the articles themselves. We find as a fact that respondent was willing to

accept such release even with the "under protest" notation and that payment was not therefore made conditional upon the waiver of any legal rights of libelant. Cf. Prindes v. The S.S. African Pilgrim, 266 F.2d 125, 128 (4th Cir., 1959). Libelant was not asked to waive a disputed claim.

In accordance with the foregoing, libelant is entitled to judgment for his accrued wages in the amount of $1,083.06, plus $185.00, the amount fixed by his union's collective bargaining agreement for transportation wages and subsistence to the west coast.

Settle decree.

This memorandum is filed in lieu of findings of fact and conclusions of law.