## NEWMAN v. UNITED FRUIT CO.
### No. 260.

Circuit Court of Appeals, Second Circuit.
Feb. 29, 1944.

William L. Standard, of New York City, for libellants.

W. Dale Williams, of New York City, for respondent.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This suit was brought under § 594 of Title 46 of the U.S.C.A., R.S. § 4527; and involves two questions: first, whether the libellants, who are seamen, were entitled to one month's wages; and second, whether they are entitled, in addition, to one month's maintenance. The district judge granted the wages, but denied the maintenance; and each side has appealed. The facts, which were stipulated, were as follows. On the 28th of May, 1941, the libellants signed articles as members of the crew of the respondent's steamer, "Quirigua", for a voyage from the port of New York to Central and South American Ports, and return. The articles provided for monthly wages; and the reasonable amount of each man's subsistence on the vessel was $2.50 a day. On May 29th the respondent discharged the libellants without their consent and without any fault on their part; and the voyage provided in the articles was never made. The respondent's reason for the discharge was that the United States Maritime Commission requisitioned the "Quirigua" for use in the United States Navy, and required the respondent to cancel all existing arrangements for her prospective voyage. The details of this requisition were as follows. On the 27th, the President proclaimed "an unlimited national emergency," and on that day someone in the office of the Commission telephoned from Washington to New York to Jackson, vice-president and counsel of the respondent, and asked him to come to Washington "to discuss the question of delivery to the Navy for immediate use two of the Company's ships of the Chiriqui-Quirigua class, of which the Company had six." Jackson went to Washington that day and arrived on the 28th, where one, Morse, who was in charge of the procurement of large vessels, told him that the Navy had requested the Commission to requisition "two ships of the Chiriqui-Quirigua class, and that the Commission was to requisition the use of the two of these ships which were then in the United States." Jackson answered that both the "Chiriqui" and the "Quirigua" had already been booked with cargo and passengers, and that it would be inconvenient and expensive to cancel their sailings. Morse then telephoned to the Navy Department, which "insisted that these two vessels be taken"; and Morse thereupon informed Jackson that the Commission "would forthwith issue a requisition order and take possession of the vessels unless the Company agreed to take all steps necessary to make the ships available for the Navy not later than Monday morning, June 2, 1941." Acting upon this demand, the respondent tendered the ships to the Navy on May 31, 1941, after discharging the libellants on the 29th, as we have said. It does not appear at what hour on the 29th the libellants signed the articles; nor at what hour on the same day Morse told Jackson that the Commission would take the ships. The judge held that the discharge was improper, and that one month's wages were due; but that the recovery should be lim-

ited to wages, because the statute did not include any allowance for maintenance.

 We are not faced with the question whether the requisition of the "Quirigua" would have excused the respondent, if the libellants had signed the articles before the President's proclamation; and we do not indicate any opinion upon the point. Section 594 requires the seaman to satisfy the court which hears the case that he has "been improperly discharged" before he can recover the "compensation" awarded; and we reserve decision as to whether anything which will excuse the shipowner for any other breach of contract, will not excuse him here. Further, we assume arguendo that a requisition will ordinarily excuse performance by a vessel of a contract theretofore entered into. Restatement of Contracts § 458(b), and Illustration 2. We can avoid these questions because, assuming that the requisition was an excuse, the burden of proving it lay upon the respondent. It is true that very recently the House of Lords has held in a case of "frustration" of a voyage by the destruction of a ship, that the shipowner did not bear the burden of proving that the ship was not lost through his fault. Constantine v. Imperial Smelting Co., [1942] A.C. 154. However, none of the opinions suggested that the shipowner did not have to prove that the event occurred which made performance impossible; and obviously it would be absurd to impose the duty of proving the negative upon the promisee. Williston, § 1937.

As we have said, the libellants did not "sign on" until the 28th and the respondent had already learned on the 27th that two ships of the "Quirigua" class were likely to be requisitioned "for immediate use." That alone put it on notice that the "Quirigua" herself might be taken; indeed, apparently she and the "Chiriqui" were at the time the only ships of their class in the United States. When, notwithstanding that warning, the respondent engaged a crew on the next day, it certainly assumed the risk of the requisition which followed. But that was not all, for formal requisition was made on the 28th, and it does not appear that it was then too late to stop the engagement of the crew. That alone is enough, since as we have said, the respondent had the burden of proof to show that the requisition was an excuse for the breach.

As to the claim for maintenance, while, it is true that the statute is not punitive and should be construed liberally, we see no reason to add to it what does not appear on its face. In § 591 Congress used the phrase: "A seaman's right to wages and provisions," while elsewhere, in the sections dealing with "Wages of Seamen" —§§ 591–605—it spoke only of "wages." This opposition seems to us not to be without significance. Moreover, the same distinction is carried forward into § 665 regarding "provisions."

Decree affirmed.