Wilbur Russell DAVIS,
Plaintiff-Appellant,

v.

DELTA STEAMSHIP COMPANY, INC.,
Defendant-Appellee.

No. 82–3508
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 26, 1983.

Lambert & Lambert, John D. Lambert, Jr., New Orleans, La., for plaintiff-appellant.

Terriberry, Carroll, Yancey & Farrell, Robert J. Barbier, New Orleans, La., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A ship's officer contends that he was improperly discharged. After a bench trial, the district judge found that the officer had failed to demonstrate that the discharge was wrongful. He also refused to set aside a mutual release between the officer and the officer's employer. The officer contends that the judge's findings were erroneous and that he failed to accord proper weight to the prior conclusion of another district judge, who had reversed the result of an administrative Coast Guard hearing, that the officer's license should not be revoked. Because we conclude that the rec-

ord supports the findings of fact and that the court's failure to accord preclusive effect to the license revocation proceeding was correct, we affirm the judgment.

■ Wilbur R. Davis was employed as a second mate by Delta Steamship Co. aboard the S.S. DELTA NORTE. After completing voyage 46, the vessel docked in the Port of New Orleans on August 6, 1979. Davis signed off of voyage 46 and, the same day, signed on for voyage 47 aboard the same ship. The DELTA NORTE was undergoing a Coast Guard inspection, and was preparing to leave on voyage 47 at midnight or early in the morning. Davis was working on the bridge and had been instructed, among other things, to prepare the voyage 46 log book for transmittal to Delta's office before the vessel's departure. The district judge found as a fact that Davis asked the chief mate's permission to go ashore; that the mate, since deceased, issued a direct order that Davis was not to go ashore until all his work was completed; and that, shortly thereafter, Davis left the vessel. Davis testified that he went ashore to purchase some navigational books and charts, gather his mail at the union hall, and pick up his car. The port captain of the Delta Steamship Co., however, testified that Davis' method of obtaining the books and charts was improper and unauthorized. The judge found that Davis was given an order and disobeyed it. He then found that there was no wrongful discharge. The record amply supports this finding. It, therefore, floats across the clearly erroneous bar, which is the only barrier to its acceptance, with flying colors. See Fed.R.Civ.P. 52(a).

Davis claims that his infraction was too minor to justify a discharge. This does not demonstrate that the district court's findings were clearly erroneous. Compare Trent v. Gulf Pacific Lines, 42 F.2d 903 (S.D.Tex.1930) (cook's discharge for failure to turn over keys to the cold storage box was wrongful) with The S.J. Wilder, 284 F. 728 (S.D.Ala.), aff'd, 284 F. 729 (5th Cir. 1921) (master's dissatisfaction with quality of cook's food justified discharge); see generally Annot., 41 A.L.R.Fed. 811, 828–30

(1979). The law of the sea is obedience. Disobedience of a master's reasonable orders constitutes just cause for discharge. 1B Benedict on Admiralty § 65, at 5–17 (7th ed. 1982).

■ The burden in a case brought under 46 U.S.C. § 594 (1976) is on the seaman to prove that his discharge was wrongful:

Any seaman who has signed an agreement and is afterward discharged before the commencement of the voyage or before one month's wages are earned, without fault on his part justifying such discharge, and without his consent, shall be entitled to receive from the master or owner, in addition to any wages he may have earned, a sum equal in amount to one month's wages as compensation, and may, on adducing evidence satisfactory to the court hearing the case, of having been improperly discharged, recover such compensation as if it were wages duly earned.

46 U.S.C. § 594 (emphasis added); see Newman v. United Fruit Co., 141 F.2d 191, 193 (2d Cir.), cert. denied, 323 U.S. 711, 65 S.Ct. 37, 89 L.Ed. 572 (1944). Davis incorrectly relies on Newman for the proposition that the burden of proof is on the shipowner to justify his firing. Newman, however, involved the requisition of two merchant vessels by the Navy in 1941. The crew brought claims under 46 U.S.C. § 594 for wages for the "frustration of the voyage." The court held that the shipowner had the burden of proving that the requisition of the vessels was the excuse for the termination of the voyage. But on the question of the burden of proving improper discharge, Judge Learned Hand stated: "[s]ection 594 requires the seaman to satisfy the court which hears the case that he has 'been improperly discharged' before he can recover the 'compensation' awarded." 141 F.2d at 193.

■ When Davis was discharged, he was tendered one day's wages, which he refused. He left the vessel and returned to his home in Many, Louisiana. Several weeks later he returned to New Orleans and met with representatives of his union and company

officials. He then signed a mutual consent release before the United States Shipping Commissioner. Later, the Coast Guard investigated the circumstances of the discharge in a separate administrative proceeding relating to revocation of the plaintiff's license. At the conclusion of that proceeding, the administrative law judge determined that Davis had disobeyed a lawful order. However, the U.S. Magistrate found the evidence insufficient to support this finding and recommended that it be vacated, and a district judge agreed.

Davis argues that, therefore, this district judge failed to give proper consideration to the final judgment arising from the Coast Guard hearing. That court found, based on the magistrate's recommendation, that "the record [of the Coast Guard hearing] as a whole does not support the conclusion that Mr. Davis willfully disobeyed an order . . . ." Davis apparently contends that this judgment should have some sort of preclusive effect, perhaps as a result of some form of collateral estoppel. Delta was not a party to the Coast Guard hearing, which was brought pursuant to 46 U.S.C. § 239 (1976) to investigate the conduct of licensed officers, so that hearing cannot estop it. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650, 58 L.Ed.2d 552 (1979); *see Reimer v. Smith,* 663 F.2d 1316, 1325 n. 8 (5th Cir.1981). No basis exists for according the result preclusive effect here. *See* 1B J. Moore, Federal Practice and Procedure ¶ 0.441[2], [3] (2d ed. 1982 & Supp. 1983).

Davis finally argues that the district court erred in failing to set aside the mutual consent release and award him wages for the entire voyage. The mutual release that Davis signed stated that it was for the "balance of wages due him . . . ending 6 August 1979." The district court found: "[w]hen executing the release, the plaintiff was fully cognizant of his rights and the effect of the release. The plaintiff freely admitted that he executed the release without any enticements or promises, especially from the defendant." Davis seeks to make a distinction between a mutual release and a general release. He claims that his mutu-

al release operated to release his claim for wages for only the one day he worked and did not extinguish his claim for wages for the remainder of the voyage.

 An action for wages for an improper discharge requires the seaman to prove that his discharge was without fault on his part and without his consent. 46 U.S.C. § 594; 1B Benedict on Admiralty § 65, at 5–16 to –17 (7th ed. 1982). Even if the release were set aside for just cause or were construed to apply to only the one day's wages, an argument that appears on its face to lack merit, Davis could not recover wages for an improper discharge because of the district court's finding that his discharge was not without fault on his part.

For these reasons, the judgment is AFFIRMED.